MARY E. BROOKS v. CONSERVATIVE LIFE INSURANCE COM-
PANY, Appellant.

**Mutual insurance:** FAILURE TO PAY DUES: FORFEITURE.   A provision
in a contract for mutual insurance that failure to pay dues within
a specified time shall work a forfeiture of the contract, where

taken in connection with a further provision that a suspended member may be reinstated upon certain conditions, does not operate to terminate the contract *ipso facto,* but some further affirmative act on the part of the association is required.

*Appeal from Page District Court.*— HON. N. M. MACY, Judge.

FRIDAY, APRIL 6, 1906.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

ACTION on a certificate of insurance on the life of Sumner A. Brooks in favor of the plaintiff, his widow, in the sum of $1,500. The defense was that the contract had been forfeited by nonpayment of premiums. On a trial to the court without a jury, judgment was rendered for plaintiff in the sum of $1,148.91, from which defendant appeals.— *Affirmed.*

*Allen & Lingenfelter* and *George R. Sanderson,* for appellant.

*W. P. Ferguson,* for appellee.

McCLAIN, C. J.— In February, 1886, Sumner A. Brooks became a member of the Southwestern Mutual Benefit Association, and received a certificate of membership providing for the payment on his death of $1,500 to his widow, the plaintiff in this action. The association was a mutual one, and the certificate provided for the payment of assessments by the member, not exceeding twelve each year, and semiannual dues, and that the member, failing to pay assessments and dues within thirty days after the date when due, " shall be suspended, and his certificate become null and void, and all rights and benefits, which may have accrued to the insured or his beneficiary, shall be forfeited to the association," and, further, that " a member who has been

suspended for nonpayment of his dues and assessments may be reinstated," on payment of back dues and furnishing a certificate of good health.   The certificate also provided for printed or written notices to the member.   Subsequently the Southwestern Mutual Benefit Association was consolidated with the Southwestern Mutual Life Association, but without any change or modification of the certificates of membership held by the members of the former association, and afterward in 1900, the Southwestern Mutual Life Association undertook to reorganize under the stipulated premium plan, but being unable to comply with the requirements of law in that respect, it entered into a contract of reinsurance in February, 1901, with the defendant in this action, an old line insurance company, whereby the defendant company assumed and agreed to pay all claims for death losses on valid policies of the other company then outstanding, it being agreed that the defendant company assumed such liability, " subject to any and all liens, charges, and set-offs, and subject to all the stipulations, conditions, warranties, clauses, defenses, and equities, which existed in favor of the Southwestern Mutual Life Asociation, and which would have or might have availed said (association) if this reinsurance had not been made and whether arising out of or based on the articles, by-laws, applications, policies, or contract of the said (association) or in any other manner."   It is further stipulated that the defendant company " does hereby insure all the insurance of said first party (the Mutual Life Association), now in force or effect," etc.

In March, 1901, the defendant company issued to Sumner A. Brooks a certificate of reinsurance in which, after reciting the transfer and reinsurance of the business of the Southwestern Mutual Life Association, it is stipulated that the retention of such certificate of temporary reinsurance by the certificate holder shall be construed to be an acceptance of the conditions contained in such reinsurance certificate and the obligation thereby assumed by the defendant com-

pany, and unless another option is agreed upon it shall be construed to operate as notice to said company that the certificate holder named therein accepts the reinsurance provided for in said contract upon the reserve lien plan as provided for therein. It is also provided in the certificate of reinsurance that " the cash premium payment shall remain the same as that paid to the Southwestern Mutual Life Association and shall be paid in the same manner as heretofore " and that " if no other option is chosen, as provided for in said contract of reinsurance and the said certificate or policy becomes payable while this temporary insurance is in force, the said (defendant) does hereby agree to pay the same provided that there shall be deducted from the face value of the certificate or policy hereby reinsured an amount equal to the amount of " certain loans or advances to the insured equal to the full reserve value of his policy, etc., " provided that this provision shall continue in force only until such time as a regular life policy of insurance in the (defendant) company is issued and delivered to the insured named herein."

Plaintiff founds her action on the original certificate in the Southwestern Mutual Benefit Association, and the temporary certificate of reinsurance above referred to, and alleges performance of the conditions of the contract of insurance except as to the payment of quarterly assessments and dues due September 1, 1902, and thereafter, up to the time of the death of Sumner A. Brooks, June 29, 1903, and alleges that such failure did not operate to work a forfeiture of the contract for various reasons which will be sufficiently discussed hereafter. The whole controversy in this case turns on the question whether at the time Sumner A. Brooks died the contract of insurance between him and the defendant company had been terminated by the conceded failure on his part to pay assessments or premiums and dues. Without considering all the propositions argued by counsel we can satisfactorily dispose of the case by considering one

question involved without further recital of the elaborate provisions of the original certificate and the certificate of reinsurance, and without reciting at any great length, the facts which were before the court by way of an agreed statement. We may concede that the provision in the original certificate for suspension of a member on account of nonpayment of assessments or dues became a part of the contract with the defendant company under its certificate of reinsurance, and that this contract continued in force up to the time of the death of the insured, notwithstanding stipulations in the certificate of reinsurance for the issuance of a policy in the defendant company which would supersede the certificate of reinsurance, no such policy having been in fact issued. But the provision in the original certificate with reference to suspension for nonpayment which has already been quoted is not, as we think, self-executing, but implies that to effect such suspension and the consequent forfeiture of all rights and benefits under the certificate some affirmative action shall be taken by the association and that only after proper action has been taken does the certificate become null and void. After suspension the member has the right to be reinstated on payment of back dues and assessments and the furnishing of a certificate of good health, and this provision evidently contemplates some act of suspension and notice thereof to the member after which his privilege to secure reinstatement may be exercised.

Under the general rules with reference to forfeitures and construction of the contract of insurance most strongly against the company, we have no hesitation in reaching the conclusion that the provisions above quoted as to suspension imply an affirmative act on the part of the association or the duly authorized officers thereof. Provisions very similar have frequently been thus construed. *Jelly v. Muscatine, etc., Mut. Aid Soc.,* 120 Iowa, 689; *Northwestern Traveling Men's Ass'n. v. Schauss,* 148 Ill. 304 (35 N. E. 747); *Warwick v. Supreme Conclave,* 107 Ga. 115 (32 S. E.

951). And see 2 Bacon, Benefit Societies, section 385. No doubt the failure to pay assessments may be made to operate *ipso facto* as a suspension; but taking all the provisions of this certificate together they are not susceptible of that construction under the usual rules applied in such cases.

The defendant association did on the 1st of September mail a notice to the insured that a quarterly cash premium would be due September 30th and this notice was received by insured in due course of mail, and in this notice the insured was advised that unless such premium be paid by or before the date named his policy would become forfeited and void. But there was no provision in the reinsurance certificate for a forfeiture on failure to pay a premium on the date when it became due, and the only provision on which defendant can rely as operating to work a forfeiture was the provision quoted above from the original certificate in the Mutual Benefit Association. It is true that by the contract of reinsurance the insured became obligated to pay quarterly installments of premium instead of monthly assessments, but without a specified provision for forfeiture on account of nonpayment of such quarterly installments, the right of insured would not become forfeited without some action on the part of the defendant company. *Nederland Life Ins. Co. v. Meinert,* 127 Fed. 651 (62 C. C. A. 377); 2 Joyce, Insurance, section 1098.

The other grounds relied upon for appellee as avoiding any forfeiture which might otherwise have resulted from the nonpayment of the premiums by insured, need not be considered. The appellant has wholly failed to make out any forfeiture, and is liable under its contract.

The judgment is *affirmed.*