BERTHA M. ANDREWS, Appellee, v. UNION MUTUAL LIFE INSURANCE COMPANY of Iowa, Appellant.

No. 43165.

NOVEMBER 12, 1935.

C. B. Hextell, C. H. Burgardt, and John F. Webber, for appellant.

Gilmore, Moon & Bannister, for appellee.

POWERS, J.—The facts in this case are not in dispute and appear by stipulation of the parties. But one question is involved. Was the policy of life insurance on which the action of the plaintiff is based in force at the time of the death of the alleged insured? The action is at law. It was tried to the court without a jury by agreement of the parties. The trial court found for the plaintiff. The defendant appealed. The plaintiff-appellee will be referred to herein as the beneficiary, and the defendant-appellant as the insurance company.

The policy bears date of January 10, 1931. On that date it was by the insurance company mailed to the insured with a let-

ter acknowledging the receipt of the first premium and a certificate that the policy became effective at twelve o'clock noon on that date. In the policy the insurance company agreed to pay to the beneficiary the sum of $5,000 if death occurred to the insured during the continuance of the policy. Premiums on the policy were payable quarterly in the amount of $48.20. The quarterly premiums for the year 1931 were all paid by the insured. The quarterly payment which the insurance company claims became due on the 10th day of January, 1932, was not paid. The insured died at 10:45 p. m. on February 10, 1932. The policy contained a provision that "grace of one month, not less than thirty days, shall be granted for the payment of every premium after the first, during which month the insurance shall continue in force."

It is the claim of the insurance company that a quarterly premium became due at twelve o'clock noon on the 10th day of January, 1932; that this premium has never been paid; that under the terms of the policy, a grace period of one month was allowed; that such grace period began to run at twelve o'clock noon on the 10th day of January, 1932, and expired at twelve o'clock noon on the 10th day of February, 1932, and that since the insured did not die until 10:45 p. m. on February 10th, he died at a time after the grace period had expired and the policy had lapsed.

Many propositions are urged by the beneficiary with reference to the question as to when the premium was due and when the grace period began to run and when it expired. We deem it necessary to consider only one of them, as it is controlling in this case.

■■■ I. The policy provided for the payment of the first premium on the effective date of the policy and that subsequent payments would become due at twelve o'clock noon, Central Standard time, on the day of the month corresponding with the date of acceptance and acknowledgment of the first premium. It also provided for a grace period as hereinabove pointed out, and then in paragraph eight with reference to payments of premiums the policy further provided:

"Notice of every premium that may become due or payable hereunder is given and accepted by the delivery of this contract, and any further notice is expressly waived by the In-

sured. Failure to pay any premium, premium note, loan or interest when due, shall void this policy and forfeit all premiums paid hereon to the company and terminate and forfeit the Insured's right to pay any further premiums hereon, except as otherwise herein provided, *but failure to pay any premium, premium note, loan or interest thereon shall not void this contract until thirty days' notice shall have been mailed to the last known address of the Insured.*" (Italics ours.)

It is agreed in this case that but three notices of the premium due on or about January 10, 1932, were sent by the insurance company to the insured. The first notice was mailed by the insurance company at Des Moines on the 10th day of December, 1931, and advised the insured that a premium of $48.20 would become due on his policy on the 10th day of January, 1932. Thereafter, and on the first day of January, 1932, the insurance company mailed a second notice, which is designated as second and final notice of premium due, in which the insured was advised that $48.20 would become due on the policy on the 10th day of January, 1932. Thereafter, and on the first day of February, 1932, a notice of the fact that a premium had become due on January 10th was mailed, and in that notice the insured was advised that one minute past twelve o'clock on February 10, 1932, his last chance to prevent the lapse of his policy would pass. No other notices were given to the insured.

Whether or not the right to the insurance in this case was forfeited because of nonpayment of premium depends on the proper interpretation of the policy. What meaning is to be given to the following provision of the policy:

"Failure to pay premium, premium note, or interest thereon shall not void this contract until thirty days' notice shall have been mailed to the last known address of the insured."

The notice therein referred to obviously is not a notice that the premium will become due. A requirement for such a notice could be complied with by giving notice at the time the policy was issued as to the time when all subsequent premiums would become due. Indeed, the policy does that very thing, because in the paragraph quoted herein it is stated that:

"Notice of every premium that may become due and pay-

able hereunder is hereby given and accepted by the delivery of this contract.''

So that the notice referred to in the latter part of the same paragraph must be something different from a notice that a premium will become due. It must, therefore, be a notice that a premium is due or is past-due. In other words, the notice contemplated by that language is a notice, in substance, that a premium is in default. The obvious purpose of such a provision is to give to the insured thirty days after the mailing of such notice in which to avoid the cancellation of the policy. Some effect certainly must be given to that language. If we say it refers to a notice of a premium to become due, as appellant contends, then it conflicts directly with the first sentence of the quoted paragraph. If we give effect to all the language used as we are required to do, there would seem to be no escape from the conclusion that the thirty-day notice provided for is a notice of a premium due or past-due. No other alternative is suggested. Under the well-established rules for the construction of policies of insurance, as well as the rules for the construction of provisions for forfeiture (Brooks v. Conservative Life Ins. Co., 132 Iowa 377, 106 N. W. 913, 119 Am. St. Rep. 560, 11 Ann. Cas. 339), no other interpretation is possible. It is not claimed that any notice that a premium was due or past-due was mailed to the insured until the notice of February 1, 1932. The policy, under its provisions, would not be forfeited until thirty days after the mailing of that notice. It necessarily follows that the policy was continuing and in force on February 10, 1932, when the death of the insured occurred.

■■■ II. Complaint is also made that the trial court should have authorized the insurance company to deduct a full year's premium from the amount of the insurance rather than the quarterly premium. On this proposition the provisions of the contract are controlling. The policy provides that it is granted in consideration of the application and ''in further consideration of the payment, acceptance, and acknowledgment of the premium for the term and in the amount as specified in the following premium schedule:

''Premium Schedule

| Quarterly | Semi-Annually | Annually |
|-----------|---------------|----------|
| $48.20 | $94.59 | $181.90'' |

Further and in paragraph two of the policy, it is provided that:

"If the insured shall die during the month of grace, the premiums then due and unpaid will be deducted from any amount due hereon in any settlement hereunder."

Paragraph eight, however, is the one which deals more particularly with the premium payments. The last part of that paragraph we have already set out in the first division of this opinion. The first part of the paragraph is as follows:

"Paragraph eight. All premiums hereon are due and payable annually in advance at the Home Office of the Company, in Des Moines, Iowa, or may be paid to anyone duly authorized to receive the same, in advance, in exchange for the Company's official receipt, signed by the President or Secretary and countersigned by the person authorized to receive the same. A premium other than an annual will be accepted according to the table of installment payments endorsed hereon and made a part hereof; provided that the receipt of any such premium less than a full annual shall not have the effect to continue this policy in force longer than the period of time covered by such partial payment. Any installments of an annual premium for the insurance year remaining unpaid will be deducted in any settlement of this policy or any benefit thereunder."

While it is true that in paragraph two it is provided that only the premium due will be deducted in any settlement under this policy, it appears from paragraph eight that premiums are due annually in advance; and that while the privilege is given of paying such annual premium in installments, any unpaid installments will be deducted in any settlement under the policy. The language of this paragraph cannot be reconciled with any other idea than that the insurance premium for the year becomes due at the beginning of the year, and that if death occurs at any time during the insurance year any unpaid installments of insurance for that year will be deducted. It follows that in this case a full year's premium may be deducted by the insurance company because none of the premium for the second insurance year, commencing January 10, 1932, has been paid.

It is the conclusion of this court that the trial court properly held that death occurred to the insured during the continuance

of the policy, but that there was error in not permitting the insurance company to deduct a full year's annual premium, amounting to $181.90, from the face of the policy.

Affirmed in part; reversed in part.

The Chief Justice and all Associate Justices concur.