LINCOLN NATIONAL LIFE INSURANCE COMPANY *v.* SOBEL.

[No. 16,371. Filed July 2, 1941. Rehearing denied December 6, 1941. Transfer denied January 26, 1942.]

332

334

*White, Wright & Boleman,* of Indianapolis, and *Allen C. Steere,* of Fort Wayne, for appellant.

*Linder, Seet & Rigot,* of Indianapolis, and *Harding & Harding,* of Crawfordsville, for appellee.

BLESSING, C. J.—This is an appeal from a judgment in the Montgomery Circuit Court involving two insurance policies for two thousand five hundred dollars ($2,500) each on the life of Nathan Salin. These policies were identical and the evidence was equally applicable to both of said policies. For the purpose of brevity we will treat this case, with some exceptions as to the statement of facts, as though it involved a suit on one policy only. The complaint therefore can be described as one in two paragraphs. The first paragraph of complaint was an ordinary suit upon a life policy and contained the allegation that all of the conditions of said policy were performed by the insured and plaintiff. The second paragraph of complaint was upon the theory that all of the conditions of the policy had been performed by the insured and plaintiff except those which were waived by the insurance company, said paragraph setting out

the facts on which said waiver was based. To these
paragraphs of complaint the appellant (defendant be-
low) filed two paragraphs of answer, the first of which
was a general denial and the second an affirmative
answer admitting the execution of the policy but deny-
ing that the assured and the plaintiff, or either of them,
fully performed all of the conditions of said policy and
then stating the conditions in the policy not performed
by the plaintiff or assured. To the second paragraph
of answer the plaintiff replied in general denial and by
a second paragraph asserted a waiver and set forth the
facts upon which said waiver was based. The appellant,
before the issues were closed, also filed a third para-
graph of answer asserting that the plaintiff had no
insurable interest in the contract sued upon and alleged
that said insurance was not issued at the request of
the assured but on the contrary that said policy was
procured from this appellant by the appellee, a brother-
in-law of the assured. This paragraph asserts that
said policy contract was never delivered to Nathan
Salin but that the same was delivered to the appellee
who received said policy and ever since has had sole
and exclusive possession thereof. This paragraph also
alleged that the assured at no time paid any of the
premiums required by the terms of said policy contract
but on the contrary all of the premiums which were
paid were paid by the plaintiff and that said contract
was not issued upon the request of the assured but
was procured and issued at the instance and request
of plaintiff for the purpose solely of procuring insur-
ance on the life of the assured, Nathan Salin, payable
to himself, without at the time having any insurable
interest in the life of said Nathan Salin by reason of
which the contracted insurance is solely speculative
and illegal. Appellant also asserted in said paragraph

of answer that said contract was delivered at a time when the appellant was led to believe that said policy had been applied for in good faith by the insured and that the appellant was unaware of the true facts until after the institution of this suit. To this paragraph of answer, the plaintiff filed a reply which closed the issues.

The cause was submitted to the jury which returned a verdict on both policies in the sum of six thousand three hundred dollars ($6,300), and judgment was rendered accordingly. A motion for a new trial was timely filed, which was overruled and excepted to by the appellant; and this ruling constitutes the only assignment of error relied upon in this appeal.

The specifications in the motion for a new trial are:

That the verdict of the jury is not sustained by sufficient evidence.

That the verdict of the jury is contrary to law.

Error in giving to the jury the court's instructions, certain of the plaintiff's instructions and in refusing to give certain of the defendant's instructions.

Error in the admission of certain evidence.

The appellant, The Lincoln National Life Insurance Company, was a corporation duly organized and doing business in the State of Indiana. On March 19, 1929, this company issued two policies of insurance on the life of Nathan Salin in which policies the appellee, Joseph Sobel, who was Salin's brother-in-law, was named as beneficiary. At the time these policies were issued, Salin was of the approximate age of twenty-one years and was employed as a collector in appellee's furniture and stove business. Prior to March 19, 1929, appellee had talked to the soliciting agents of the appellant concerning insurance on the life of Salin, and sub-

sequently an application was signed by Salin, a medical examination had and the policies issued. Salin was found to be a substandard risk and the annual premium was fixed at seventy-nine dollars and fifty-one cents ($79.51) on each policy. At the time the policies were delivered, the appellee paid the first premiums; and all subsequent premiums that were paid on said policies were paid by said appellee. Salin died on October 3, 1933.

Restricting our comments to one policy, we first give consideration to the contention of the appellant that the policy lapsed because of the failure to pay a policy loan and a delinquent premium. In order to determine this question, it is necessary that consideration be given to certain clauses in the policy with reference to the payment of premiums and to provision for and the payment of automatic premium loans. These provisions are set out in clauses two, three, eleven, and twelve of the policy and are as follows:

"2. How Premiums Are Payable.

"Premiums are due and payable in advance at the Home Office of the Company in the city of Fort Wayne, Indiana, but may be paid to an authorized agent of the Company only in exchange for the Company's receipt therefor signed by the President or the Secretary and countersigned by the agent as evidence of such payment. The mode of premium payment may be changed from annual to semi-annual or quarterly instalments or vice versa at the premium rates in use by the Company at the date hereof, but the payment of any premium shall not continue this Policy in force longer than the time for which the premium payment is made, except as otherwise provided herein.

"3. Grace Period for Payment of Premiums.

"If any premium is not paid on or before the date it falls due, the policyholder is in default; but a grace of one month (not less than thirty days) without interest charge will be allowed in

the payment of every premium after the first, during which time the insurance continues in force.

"11. Loans to Pay Premiums May Be Made Automatically.

"This policy shall not lapse or become forfeited by reason of the non-payment of the premium within the month of grace allowed herein, provided the cash surrender value of the Policy less any indebtedness on or secured by this Policy is equal to or greater than the premium then due and unpaid. In such event the Company will treat the premium then due as paid, and the amount of such premium (with interest as hereinafter provided) shall become a first lien upon the Policy in the Company's favor in priority to the claims of any assignee or of any other person. If the net available cash surrender value be less than the premium that is due, the Company will continue this insurance in force until such value is exhausted (that is, for a period which bears the same ratio to the full premium period then ensuing as such net value bears to the premium then due) and if prior to the expiration of such reduced period the last due premium be not paid in full, all liability of the Company on this Policy shall thereupon terminate subject to notice as hereinafter provided. While this Policy is thus sustained in force, the payment of premiums may be resumed without medical examination and the accumulated loans may be paid off or allowed to stand as a lien against the Policy. These automatic premium loans shall bear interest at 6% per annum from the dates the respective premiums loaned become due and, if unpaid, shall be compounded yearly in advance at the beginning of each policy year.

"The Automatic Premium Loan Privilege will be granted either at the request of the Insured in his application for this insurance, or upon a written request made subsequently, but may be revoked at any time upon written notice to the Company at its Home Office.

"12. How Policy Loan May Be Made.

"After three full years' premiums have been paid upon this Policy, and while no premium payment is in default, the Company will, without the

consent, signature or participation of any revocable Beneficiary, lend on proper assignment and delivery of this Policy and on the sole security thereof a sum not exceeding the cash value stated in the table less any existing indebtedness on or secured by this Policy and any unpaid balance of the premium for the current policy year, provided interest at 6% per annum on the whole amount of the loan is paid in advance to the end of the current policy year. Interest at the same rate will be due and payable annually in advance thereafter, and if not so paid, will be added to the principal and bear the same rate of interest.

"Failure to pay any policy loan, automatic premium loan or interest thereon shall not avoid this Policy unless the total indebtedness shall equal or exceed the full amount available hereunder and in no event, until thirty days after notice thereof shall have been mailed to the last known address of the Insured, and of the Assignee, if any."

The premiums for 1929, 1930, 1931, and 1932 were paid. The semi-annual premium due on March 19, 1933, was not paid; and the company, carrying out the provisions in the policy for an automatic premium loan, applied the then cash surrender value of the policy less previous indebtedness as a partial payment of said semi-annual premium. Computed according to the formula provided in the policy, the automatic premium loan, including interest, continued the policy in force until the seventh day of August, 1933, at which time according to said formula, the indebtedness to the company and the cash surrender value of the policy were equal. At the time the automatic premium loan was made, a notice was sent to the address of appellee, who, on May 13, 1931, had advised appellant to send all further mail on this policy to the appellee at said address.

This notice advised the appellee and the assured that a premium loan had been granted in the sum of thirty-

three dollars and five cents ($33.05) and the notice further stated: "The cash value of your policy is not large enough to permit the granting of a loan for the entire premium. A payment as specified is required and remittance to cover should be forwarded immediately. Date of termination of policy 8-7-33. Payment required to continue policy to next premium due date. $9.91." On the face of the notice also appeared the word "Important" printed in large type, and below the word, this language: "Unless required payment is made as specified above the Policy will terminate." No attention was given by the assured or appellee to the demand for the payment of the nine dollars and ninety-one cents; and this portion of the premium due on March 19, 1933, was never paid. On July 7, 1933, the appellant sent another notice to the same address. This notice referred to the policy number, was dated as above and said: "You are hereby notified that your policy will terminate on the date given, and the liability of the company thereupon cease and terminate, by reason of the indebtedness being equal to the cash value. This notice is mailed to you that you may have ample time and opportunity to arrange to continue the insurance in force.

"F. L. Rowland,
Secretary"

To the left of the above quotation said notice bore the additional information as follows: "Date of termination of Policy, Aug. 7, 1933," and below that, "Thirty day notice of Termination of Policy." No payment was made to the company following this notice on either the policy loan or the balance of the premium of nine dollars and ninety-one cents above referred to, nor was there any payment made on the premium due on September 19, 1933, or prior to the death of the

assured on October 3rd of said year. The appellee had carried on all of the correspondence with the company that had reference to the policy; and there was no further correspondence after August 7, 1933, by the appellee and the appellant as shown by the evidence except the following: On September 25th, the appellee wrote the company in substance that he did not have the money to pay the premiums and that he did not want to lose the money that he had already paid on the policy and asked for a suggestion for a plan to help him out until business got better. To this letter the appellant replied on September 29, 1933, in the following language (omitting the formal parts):

"This will acknowledge your recent letter concerning the continuance of these two Policies which lapsed August 7, 1933.

"The annual premium on each Policy is $79.51, however, if you cannot conveniently pay this amount we will consider reinstatement upon receiving a remittance of $61.31 on each Policy. Such a remittance with the increase in cash value as of March 19, 1934, will continue the Policies in force until that time.

"If you cannot pay $61.31 on each Policy then we would suggest that you have Mr. Salin apply for reinstatement of one Policy at the present time and apply for reinstatement of the other policy later on.

"Enclosed is an application for reinstatement. This form should be completed by Mr. Salin and returned to this office with the necessary remittance."

Enclosed with this letter was an application for reinstatement. In reply to this letter, the appellee wrote the company and stated that Mr. Salin took ill several days before the letter from the company had reached him and that he had passed away on October 3rd. He also stated that he realized that it would be impossible to reinstate the insurance during an illness and for that

reason did not fill out the papers. He asked for a blank on which to make out a claim for benefit on these policies under the extended benefit clause. To this letter, the company replied on October 11th, and referred to its letter of September 29th, calling attention to the lapsing of the policies on August 7, 1933, and that they had had no value since. The company also called the appellee's attention to the fact that if he would refer to the policies he would find that they had no extended insurance benefits, but even if they had, the full cash value of the policies had been withdrawn in the premium loans and there would be no value with which to continue them as extended insurance.

Going directly to the question as to whether the notice of July 7, 1933, was a sufficient compliance with the provision in the policy with reference to such notice, we are met with the challenge by the appellee that said notice could not be given until after the policy lapsed on August 7, 1933, and that failure to give notice after said date would not lapse the policy nor would said policy lapse by reason of the failure to pay the delinquent portion of the premium in the sum of nine dollars and ninety-one cents. Upon the question of the required notice, the authorities are not in accord. Appellee finds support in his contention in the cases of *Priest* v. *Life Association* (1916), 99 Kan. 295, 161 P. 631; *Mutual Endowment Assess. Asso.* v. *Essender, Adm'r* (1883), 59 Md. 463; *Ruby Steamship Corp., Ltd.* v. *American M. M. Ins. Co.* (1928), 224 App. Div. 531, 231 N. Y. S. 503. All of these cases are persuasive to appellee's point of view, but they are cases from foreign jurisdictions. Appellee cites no Indiana case except that of the *Equitable Life Assur. Soc., etc.* v. *Perkins* (1908), 41 Ind. App. 183, 80 N. E. 682. This case is not helpful to the court on the point now under consideration. In

this case an interrogatory was submitted to the jury regarding a notice and the jury found that no notice was given.

The appellant calls the attention of the court to the case of *Reserve Loan Life Ins. Co.* v. *Brammer* (1925), 83 Ind. App. 584, 146 N. E. 876. This case was decided on November 5, 1925, and the policy involved was written during the time when the act of the Legislature approved March 5, 1909 (Acts of 1909, ch. 95, p. 247), was in force. The policies in question were written on March 19, 1929, and in so far as notice is concerned are controlled by the Acts of 1925 (Acts of 1925, ch. 195, p. 466). Subdivision 9 of § 1 of the Acts of 1925, ch. 195, with respect to the provisions for notice is identical with subdivision 9 of § 5 of the Acts of 1909, ch. 95, p. 247. The opinion in the Brammer case, *supra*, reveals that the insurance company had issued a policy of insurance on the life of Brammer on November 1, 1917, for a consideration of the first premium of two thousand four hundred seventy-six dollars and twenty-five cents ($2,476.25) and two renewal premiums due November 1, 1918, and November 1, 1919. Each of these premiums were paid. The opinion shows that a loan had been obtained by the policyholder; and on November 1, 1921, the indebtedness amounted to two thousand seven hundred and nineteen dollars and fifty-six cents ($2,719.56) while the legal reserve value of that date was only two thousand seven hundred and ten dollars ($2,710). The company terminated the insurance; and the opinion shows that the notice of termination was given prior to November 1, 1921, the date that the indebtedness exceeded the reserve value. The court in that opinion says at p. 588:

> "The company, prior to November 1, 1921, notified the said Brammer in writing that it would not be possible for it to add the interest accruing

November 1, 1921, to the principal of the loan, as to do so would cause the indebtedness to exceed the policy reserve, and that it would, therefore, be necessary for him to remit to the defendant company, on or before the said November 1, 1921, the sum of $164.34, being the interest from November 1, 1920, to November 1, 1921, in order to continue said policy in force.

"On November 2, 1921, the company duly notified Brammer that said policy had been canceled and, in said notice, offered to reinstate said policy upon payment of the interest accruing November 1, 1921, of $164.34, provided said Brammer was then insurable."

Having in mind the Acts of 1909, and the Acts of 1925, it is evident that the statutory notice was given in the Brammer case and that it was given prior to the date on which the indebtedness exceeded the loan value of the policy. The statutory requirement as to notice regarding policy loans (subdivision 9 of § 1, ch. 195, Acts of 1925, p. 466) in substance is contained in clause 12 of the policy in question in this case. It has been said with respect to notice regarding the payment of premiums that the purpose of such notice is to prevent a forfeiture for nonpayment of premiums when due, because of inadvertence and forgetfulness. *Lincoln Nat. Life Ins. Co.* v. *Hammer* (1930), 41 F. (2d) 12. We do not understand that the purpose of such notice would be any different because the payment of an ordinary loan is involved rather than the payment of a premium loan. In the case of *Lincoln Nat. Life Ins. Co.* v. *Hammer, supra,* we find this quotation:

"'Promptness of payment of life insurance premiums is essential and although forfeitures are not generally regarded with favor they are necessary and should be fairly enforced in regard to such payments. A statute requiring notice of time of payment of premium and effect of non-payment

thereof should not be construed so as to make it a trap for either the company or the assured.' "

While the above quotation refers to the payment of a premium, there is no logical reason why it is not equally applicable to a policy loan automatically granted because of failure to pay a premium. To construe the notice provision of clause 12 in accordance with the contention of the appellee, would require the insertion of the word "thereafter" following the word "event" in said clause.

Our court has said in the case of *Fidelity and Casualty Company of New York* v. *Blount Plow Works* (1922), 78 Ind. App. 529, 136 N. E. 559, that one of the rules applicable to the construction of insurance contracts is that where insurance contracts are so drawn as to be ambiguous, or to require interpretation, so that reasonably intelligent men on reading them would honestly differ as to their meaning, courts will adopt that construction most favorable to the insured. The reason given is that insurance contracts are usually prepared by the insurance company who seeks to frame them so as to limit their scope. This rule does not apply when the clause to be interpreted is a statutory requirement. *Guardian Life Insurance Co.* v. *Barry* (1937), 213 Ind. 56, 60, 10 N. E. (2d) 614. In this case the court said:

"While it is true that, where there is ambiguity or doubt as to the meaning of insurance contracts, or other contracts, the preparation of which was under the control of one of the parties, the construction least favorable to the party preparing the contract is adopted, there is no rule or reason for a rule under which statutes affecting contracts should in case of doubt or ambiguity be construed against the insurance company. The statutes are not made by the company."

As above shown, the policy provision included in clause 12 is a requirement in life insurance policies in this State. Under the facts established in this case, the cash surrender value and the indebtedness due the company were equal on the seventh day of August, 1933. From this date, the assured had no further equity therein; and the policy could have been kept in force from that date, only by paying the policy loan and the delinquent premium according to the provisions of clause 11, hereinbefore set out, unless assured and appellee were excused from payment because of lack of notice.

Further light is thrown on this question by Couch on Insurance, Vol. 6, § 1442, wherein it is said regarding notice of cancellation:

> ". . . it must so unequivocally inform insured as to leave no doubt on his part that his policy will expire at the end of the period limited within the terms of the policy, and that insurer's liability under the contract *will then cease.*" (Our italics.)

The notice given by appellant in this case was not a notice of intention of future cancellation contingent on any uncertainty. The amount due was fixed and definite. The fact that the indebtedness equalled the cash surrender value on August 7, 1933, lapsed the policy, and appellant was only required to remind the assured by giving him thirty days notice of this fact.

Referring again to clause 11 of the policy, we find this specific provision therein:

> "if prior to the expiration of such reduced period the last due premium be not paid in full, all liability of the company on this policy shall thereupon terminate, subject to notice as hereinafter provided."

This was the contract between the parties; and the appellee, who was paying the premiums, was, as herein-

before stated, required by the above agreement to pay the whole of the last due premium, which included the payment of the nine dollars and ninety-one cents. If the notice provision contained in clause 12 is applicable to the unpaid portion of the premium not included in the loan, then a thirty day notice following August 7, 1933, would afford a second grace period for the payment of the nine dollars and ninety-one cents. Certainly it was not contemplated by the Legislature, when providing for notice to be given with reference to the payment of a loan, that the assured should have thirty days additional grace after August 7, 1933, and thereby extend to him free insurance for that period. If, on the other hand, we were to hold that the notice provision in clause 12 of the policy does not apply to the unpaid portion of the semi-annual premium then we would be required to say that the policy lapsed on August 7, 1933, for the nonpayment of the $9.91, irrespective of notice. We hold on the facts in this case that the notice given on July 7, 1933, complied with the law and the policy requirement and that the trial court committed error when he instructed the jury that the appellant, before it could lapse the policy, was required to give a thirty day notice subsequent to August 7, 1933. Having determined that the notice given on July 7, 1933, was a sufficient compliance with the provisions of the policy, the policy lapsed on August 7, 1933, unless the lapsing thereof was prevented because certain provisions of the policy had been waived by the company. The appellee contends that appellant had waived the provisions of the policy contract with reference to the prompt payment of premiums, and, by its course of conduct, was estopped from lapsing the policies for failure to pay the premiums on the date due.

The appellee points out the evidence on which he

relies to support this contention, and we are required to determine whether or not appellee's position is supported by the facts and the law applicable thereto.

"The question as to, what facts are necessary to constitute a waiver is a question of law. The existence of such facts in a given case is a question of fact." *Baxter* v. *Metropolitan Life Ins. Co.* (1925), 318 Ill. 369, 371, 149 N. E. 243.

The facts upon which appellee relies are undisputed.

The first fact to which our attention is called involves certain statements of the soliciting agents, made at the time when the policies were delivered. According to the testimony of appellee, these policies were delivered to him at his store by Healy and Handy, the soliciting agents, in the presence of Nathan Salin (the assured) and the bookkeeper who later became the wife of assured. The statement attributed to said agents is as follows:

"A. They said they brought two policies for $2500—each one of them. And they said that these policies are just as good policies as the Metropolitan, or the Prudential or the New York Life Insurance Company, and these policies have the clause of extended insurance. I wanted to know what that vas and they said it was after you paid three years, this policy would be in force and you could not lose them by any means. They were good for a year at least or more if you didn't make any payments at all."

To the question calling for this conversation, there was an objection; but the objection, as well as the motion to strike out the answer, was overruled.

The only evidence as to the legal relationship of these agents with the appellant, is the statement of Joseph Sobel (appellee), when he testified that they were at the time employed by the Lincoln National Life Insur-

ance Company of Fort Wayne, and the further evidence that they were the parties with whom Sobel had talked to about procuring this insurance, that they delivered the policies, took from Sobel his check for the first premium payable to the appellant and cashed the same.

In our opinion this evidence was incompetent and should have been excluded. This statement was in contravention to the terms of the policy contract and there was no showing that these men, who were nothing more than soliciting agents under the evidence, had any apparent authority to enter into any oral contract of insurance and thereby bind the appellant.

The terms of the policy concerning the payment of premiums and automatic premium loans need not be repeated.

The applications on which these policies were issued provided:

"I agree on behalf of myself and of any person who shall have or claim any interest in any policy issued on this application as follows:

"1. That any statements, promises or information made or given by or to the person soliciting or taking this application for a policy, or by or to any other person, shall not be binding on the Company or in any manner affect its rights, unless such statements, promises or information be reduced to writing and presented in this application to the office of the Company at the Home Office."

. . .

"5. That this application, together with Part Two hereof, which I agree to complete promptly by submitting to a medical examination by an authorized examiner of the Company, and any policy issued in consideration thereof, shall constitute the entire contract between the parties hereto; and that no suit shall be brought against said Company under said contract after a lapse of six years from the time when the cause of such action accrues."

The policy further provides:

"No person except the President, a Vice President, the Secretary or an Assistant Secretary has power to change, modify or waive the provisions of this contract, and then only in writing. The Company shall not be bound by any promise or representation heretofore or hereafter made by or to any agent or person other than as above."

As against these plain policy provisions the appellee is insisting that he and the assured have a right to rely on the oral statements of the soliciting agents hereinbefore quoted. Under the circumstances of this case, it was incumbent upon the appellee as well as the assured to read the policy contract; and the presumption is that it was read by them and understood.

In the case of *Metropolitan Life Insurance Co.* v. *Alterovitz* (1938), 214 Ind. 186, 202, 200, 14 N. E. (2d) 570, our Supreme Court said:

" 'Therefore when, by its written stipulation, the document gave notice that a certain term was insisted upon, it would be contrary to the fundamental theory of the legal relations established to allow parol proof that at the very moment when the policy was delivered that term was waived. It is the established doctrine of this court that such proof cannot be received. . . . There is no hardship in this rule. No rational theory of contract can be made that does not hold the assured to know the contents of the instrument to which he seeks to hold the other party. . . .' 'What he cannot do is to take the policy without reading it, and then, when he comes to sue at law upon the instrument, ask to have it enforced otherwise than according to its terms. The court is not at liberty to introduce a short cut to reformation by letting the jury strike out a clause.' "

. . .

" 'It was his duty to read and know the contents of the policies when he accepted them. It is true that the evidence is that he did not read them,

but the legal effect of his acceptance is the same as if he had read them. He had the opportunity to read and to learn their contents, and, if he did not, it was his own gross negligence, . . .' "

In point also is the case of *New York Life Insurance Co.* v. *Fletcher* (1886), 117 U. S. 519, 530, 6 S. Ct. 837, 29 L. Ed. 934, wherein the court said:

"The company, like any other principal, could limit the authority of its agents, and thus bind all parties dealing with them with knowledge of the limitation. It must be presumed that he read the application, and was cognizant of the limitations therein expressed."

And in the case of *Raker* v. *Service Life Ins. Co.* (1932), 226 Mo. App. 1233, 1236, 49 S. W. (2d) 285, this clarifying statement was made:

" 'Ordinarily the acts of an agent within the scope of his authority will bind the principal, but where there is an express limitation of this brought to the knowledge of the person dealing with the agent, no act of the agent beyond the limitation can bind the principal.' "

The assured and appellee in the case before us had express knowledge of the limitation of the authority of the soliciting agents. This same doctrine is declared in the case of *Fisher for use of* v. *Associated Underwriters, Inc.* (1938), 294 Ill. App. 315, 13 N. E. (2d) 809. This court, in the case of *State Life Ins. Co.* v. *Thiel* (1939), 107 Ind. App. 75, 20 N. E. (2d) 693, had this same question under consideration. In the Thiel case numerous authorities are cited, and a review of the opinion in that case clearly shows the inadmissibility of the statement made to appellee concerning the payment of premiums after the third premium had been paid. The remaining evidence upon which the appellee depends as establishing waiver

by the course of conduct of appellant has to do with the premium payments in March, 1931, and in September, 1932, and the correspondence during the latter part of September and the first part of October, 1933.

On April 17, 1931, the appellee forwarded his check to appellant for the semi-annual premium due March 19, 1931. When the premium receipt was returned it showed a credit for the premium dated April 20, 1931, one day beyond the grace period. While the appellee mailed his check within the grace period, credit was not given therefor until the twentieth of April by reason of the fact that the nineteenth fell upon a "Sunday." This was not such an irregularity as would constitute any evidence as to waiver by the appellant of the policy provision that premiums were required to be paid within the period of grace. *National Council, etc.* v. *Rudler* (1919), 69 Ind. App. 175, 121 N. E. 532. On October 18, 1932, and within the period of grace, the appellee mailed a check for the premiums due on these policies, but in his letter accompanying said check he stated that he did not have any money in the bank and asked the company to hold the check for thirty days. The appellant refused to hold this check and returned the same to appellee accompanied by the following statement:

> "It will be satisfactory for you to pay the premium and loan interest on November 19. Your remittance on that day, however, should be for $87.14. This includes the two premiums and loan interest of $2.59 on each policy and eighty one cents interest on the entire amount from September 19."

According to the company's records as shown by the evidence, the cash value of each policy was still in excess of a policy loan that had been made at the request of

the appellee for the semi-annual premium due on March 19, 1932; and the cash value of said policies remaining after said loan, was sufficient to carry the policies forward until November 19, 1932. On November 12, 1932, before the expiration of the loan period appellee forwarded his check in payment of the loan premiums but failed to include an interest charge of seventy-two cents. Appellee's remittance was credited on the books of the appellant on November 15, 1932. Subsequently this small deficiency was paid and the official receipts of the company for each of the policies were forwarded to the appellee on the thirteenth day of January, 1933. There was no violation of the terms of the policies with respect to extending the time for the payment of the premiums due on September 19, 1932, to November 19th of that year. The appellant could not have lapsed the policies because said policies then had a cash value over and above the indebtedness due the company and it was required to pay the premiums under the automatic premium loan provision to such date as the cash value over and above the indebtedness would pay the same. The failure to remit the item of seventy-two cents prior to November 19, 1932, the only irregularity pointed out, did not establish a course of conduct on the part of the appellant on which appellee could rely, especially in view of the fact that official receipts carried the following provision:

"Should this policy be restored at any time by acceptance of a premium after the same is due and payable, such restoration shall not create an obligation or precedent for waiving any condition of the policy in regard to subsequent non-payment of any premium on the day it becomes due. The insured, by the acceptance of this receipt, agrees to this condition."

We are in full accord with the doctrine of waiver by estoppel as announced by many decisions of the

courts of this State. The factual situations in the cases of *Majestic Life etc., Co.* v. *Tuttle* (1915), 58 Ind. App. 98, 107 N. E. 22; *Workingmen's, etc., Assn.* v. *Leverton* (1912), 178 Ind. 151, 98 N. E. 871; *West* v. *National Casualty Co.* (1916), 61 Ind. App. 479, 112 N. E. 115; *Standard Life Ins. Co.* v. *Grigsby* (1923), 80 Ind. App. 231, 140 N. E. 457; and *Templar* v. *Muncie Lodge, etc.* (1912), 50 Ind. App. 324, 97 N. E. 546, all cited by appellee, are vastly different from the facts in this case and our examination of the cases discloses that in invoking this principle, the facts must be such as to lead the party relying upon such principle to honestly believe that he is not required to meet his obligations on the appointed day. Referring again to the conversation between the appellee and the soliciting agents when the policies were delivered, if its competency were conceded, there is a total lack of evidence showing any reliance thereon by the appellee. With reference to the premium due in March, 1931, the evidence discloses that the appellee understood his obligation and his check was mailed to the appellant two days before the expiration of the grace period. He again recognized the necessity of his prompt action concerning the premium due March 19, 1932, the evidence showing that on April 15th. of said year he wrote to the company requesting a loan under the automatic premium loan provision, notwithstanding that said automatic provision would have required the appellant to make a loan without such a request. Again we find the appellee recognizing the necessity of his promptness in forwarding his check within the grace period for the payment of the semi-annual premiums due on September 19, 1932, with the request that the check should be held as above pointed out. Every act of the appellee up to this time clearly indicates that the conduct of

the appellant did not lead him to honestly believe that the premiums would be received after the grace period and therefore no waiver, either express or implied by course of conduct, was established.

The appellee also contends that correspondence between appellee and the appellant during the latter part of September and the first part of October of 1933, is entitled to consideration upon the question of waiver. This correspondence took place after the lapse of the policies on August 7, 1933. The status of the policies had been determined; and an examination of the correspondence subsequent thereto not only shows that the policies had been lapsed, but it likewise fully discloses that appellee, recognizing that fact, excuses his delay in applying for reinstatement because of the illness of Nathan Salin. The legal effect of an offer of reinstatement does not operate as a waiver of forfeiture. *Bronson* v. *Northwestern, etc., Ins. Co.* (1921), 75 Ind. App. 39, 129 N. E. 636. In any event there is no virtue in the contention that what occurred after the policies lapsed in any way influenced the conduct of the appellee prior to the lapsing of the policy contracts. The appellee has not pointed out any affirmative proof that there was any reliance by appellee to his prejudice, and we think there is none. The payment of the seventy-two cent interest item on or prior to January 13, 1933, was the last payment made by the appellee. He paid no attention to the request for an immediate remittance of nine dollars and ninety-one cents on each policy when notice of the automatic loan went forward concerning the premium due March 19, 1933, and he gave no heed to the thirty day notice of July 7th, either with regard to the payment of the loan or the unpaid portions of the premiums not covered by the loans. He simply quit his payments. Claim of

waiver by estoppel must be supported by proof and cannot be pleaded as a substitute for appellee's own neglect. In view of our conclusions hereinbefore reached with reference to notice, and the evidence relating to waiver by estoppel, it is our opinion that the verdict in this case was not supported by the evidence, was contrary to law, and the refusal of the court to give appellant's instruction number one directing a verdict for the appellant was error.

The remaining question for our consideration is the contention of appellant that, under the issue raised by the third paragraph of appellant's answer and the evidence applicable thereto, the policies in suit were wagering contracts, void from their inception, and that appellant by reason thereof, was entitled to a directed verdict in its behalf. The evidence discloses that the insured was a brother-in-law of appellee and employed as a collector in appellee's business; that he was engaged to appellee's bookkeeper whom he married in the month of June, 1929; that he signed the applications for these policies, reserved the right to change the beneficiary, and submitted himself to appellant's doctor for a medical examination. There was testimony that he intended to change the beneficiary as soon as he secured a good job, but no such change was ever made. On the other hand the evidence discloses that the appellee carried on the initial negotiations for these policies; that they were delivered to him in the presence of the assured; that he paid all of the premiums that were paid thereon and carried on all of the correspondence relating to said policies subsequent to their delivery.

On March 19, 1929, there was in force and effect in this State a statute which authorized insurance companies to write policies of insurance upon the life of

any person, and to name as beneficiary therein any person with or without an insurable interest. (Acts of 1929, ch. 176, p. 574.) This act became effective on March 14, 1929, and in so far as the question here involved reads as follows:

". . . any life insurance company organized under the laws of this or any other state and admitted to do business in this state, is hereby permitted and empowered to write policies of insurance on the life of any person and may upon the request of any such person name as payee or beneficiary in said policy any person or persons, natural or artificial, with or without an insurable interest, or his estate."

It would appear from the reading of the above statute that if the assured took these policies out on his own life he had the right to do so and to name any person as a beneficiary therein that he might select. The appellant contends, however, that under the facts as hereinbefore set out, the assured was only the nominal party and that the appellee was the real party in interest. The law with respect to wagering contracts of insurance is succinctly stated in the case of *Lyman* v. *Jacobsen* (1929), 128 Ore. 567, 576, 275 P. 612, 73 A. L. R. 1028, 1033, wherein the court says:

" '. . . that where one takes out a policy upon his own life as an honest and *bona fide* transaction, and the amount insured is made payable to a person having no interest in the life, or where such a policy is assigned to one having no interest in the life, the beneficiary in the one case and the assignee in the other may hold and enforce the policy if it was valid in its inception, and the policy was not procured or the assignment made as a contrivance to circumvent the law against betting, gaming and wagering policies.' "

Applying the rule of law above stated, it is apparent that if Nathan Salin contracted for these policies upon

his own life in an honest and bona fide transaction between him and the appellant and named appellee as beneficiary therein the appellee is entitled to enforce payment on these policies in so far as the question of wagering contracts is involved. On the other hand, if Joseph Sobel, the appellee herein, procured these policies on his own account and in his own behalf, Nathan Salin being only the nominal and not the real party in interest, and the appellee having no insurable interest in the life of said Salin, said policies were void as wagering contracts. The question as to whether these contracts were wagering under the facts as above disclosed was a question to be submitted to the jury under appropriate instructions, and we are not able to say as a matter of law that the policies in suit were void as against public policy.

In view of our conclusions herein, other errors complained of are not likely to arise in any further proceedings in this cause and therefore they require no consideration upon this appeal.

Judgment reversed with instructions to the trial court to grant the appellant a new trial and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 35 N. E. (2d) 121.

## ON PETITION FOR REHEARING.

BLESSING, J.—On a petition for rehearing in this cause, the appellee, in addition to vigorously asserting that the notice provision, as set forth in clause 12 of the policies in suit, required notice of cancellation subsequent to the 7th day of August, 1933, contends that this court by its original opinion held that the above notice provision of the policies was required in said policies notwithstanding the fact that the assured was a substandard risk.

The original opinion admits, and the record indisputably shows, that the assured in the instant case was a substandard risk. The opinion does not state, and we do not hold, that the notice provision as set forth in clause 12 of the respective policies was a required provision of the statute. While the appellant, in its brief on petition for rehearing, contends that the notice provision for cancellation as required by the statute is applicable to both standard and substandard risks, we think the contention of appellant in this respect is unsound. Clause 13 of the Acts of 1925, ch. 195, p. 466, specifically exempts insurance companies from the obligation to include in their policies a notice provision for cancellation, such as involved in this case, where substandard risks are insured.

If we are correct in holding, and we think we are, that a compliance with the notice provision required by statute is met by giving notice thirty days prior to the date on which the cash value and the indebtedness become equal, we can find no sound logic for holding that a notice provision in substantially the same language as that set forth in the statute should require a different interpretation where the insured is a substandard risk. A voluntary inclusion of the notice provision in a contract covering a substandard risk is solely for the benefit of the insured. Having adopted substantially the language of the statute, we find no reason requiring a different construction of such notice provision even though we admit the existence of ambiguity in the language of the notice provision. The language in the statute concerning the notice provision was not the language of the insurance company, but the language of the Legislature; and the insurance company is not responsible for the ambiguity. Neither is it to be penalized, under such circumstances, by the

general rule that when insurance contracts are so drawn by the company as to be ambiguous, and subject to different reasonable interpretations, courts will adopt that construction most favorable to the insured. To so hold would require separate interpretations of the same identical language.

The appellee insists on a more favorable construction of the notice provision on the substandard risk in these policies because of the fact that a substantially larger premium was charged the insured. It is our opinion that this argument is more ingenious than sound. The assured and the beneficiary who paid all of the premiums that were paid were equally cognizant of the character of the risk involved; and the beneficiary, knowing the facts, was especially warned of the hazard and the necessity for prompt payment of the premiums and policy loan premiums if the policies were to be kept in force.

The appellee also contends that this court in its original opinion went outside its authority and weighed the evidence with respect to waiver by course of conduct on the part of the insurance company.

Of course, it is elemental that this court will not weigh conflicting evidence, nor will it deny the fact finding body the right to draw reasonable and legitimate inferences from the facts established by the evidence. We think a reading of the original opinion does not justify appellee's criticism. The competent facts in this case offered by appellee to prove waiver by course of conduct have all been carefully traversed; and the original opinion holds, and we reaffirm that holding, that there are no facts established showing a waiver by the insurance company by course of conduct; and instead of different inferences to be drawn from the facts established, there is but one conclusion reason-

ably deducible from such facts, and consequently no question for the jury to decide. Upon a motion for a new trial, it was not only the prerogative, but the duty of the trial court to determine whether there was any evidence sufficient to establish a waiver by course of conduct; and upon appeal, it is the duty of this court, when the question is properly presented, to render a decision upon the same issue. We find no reason for coming to a different conclusion than we did in the original opinion. In addition to the case of *Baxter* v. *Metropolitan Life Ins. Co.* (1925), 318 Ill. 369, 149 N. E. 243, the following cases are in point on the question last discussed: *Padgett* v. *Cunningham* (1930), 156 S. C. 356, 363, 153 S. E. 280; *Gen. Elect. Co.* v. *N. K. Ovalle, Inc.* (1939), 335 Pa. 439, 6 A. (2d) 835; *Cummings* v. *Conn. Gen. Life Ins. Co.* (1930), 102 Vt. 351, 148 A. 484.

In the case of *Padgett* v. *Cunningham, supra,* the court said:

> "As a general rule, the question of estoppel is one for the jury, but, where the facts relied on to invoke it are undisputed, as here, it is a matter for the Court."

Language of a similar character is found in the other two cases last cited. Having given careful attention to all of appellee's contentions as set forth in his petition for a rehearing, and ably briefed, we are of the opinion that the petition for rehearing in this case should be denied, and it is so ordered.

Stevenson, J., dissenting.

DISSENTING OPINION ON PETITION FOR REHEARING.

STEVENSON, J.—After careful consideration of the questions discussed in support of the petition for rehear-

ing, it is my opinion that the petition for rehearing should be granted.

It is my opinion that the policies of insurance involved in this litigation did not lapse on August 7, 1933. It is true that the premiums due March 19, 1933, were not paid. The policies, however, contained an automatic premium loan provision which reads as follows:

"This Policy shall not lapse or become forfeited by reason of the non-payment of the premium within the month of grace allowed herein, provided the cash surrender value of the Policy less any indebtedness on or secured by this Policy is equal to or greater than the premium then due and unpaid. In such event the Company will treat the premium then due as paid, and the amount of such premium (with interest as hereinafter provided) shall become a first lien upon the Policy in the Company's favor in priority to the claims of any assignee or of any other person. If the net available cash surrender value be less than the premium that is due, the Company will continue this insurance in force until such value is exhausted (that is, for a period which bears the same ratio to the full premium period then insuing as such net value bears to the premium then due) and if prior to the expiration of such reduced period the last due premium be not paid in full, all liability of the Company on this Policy shall thereupon terminate subject to notice as hereinafter provided."

On March 19, 1933, when default occurred in the payment of premiums, the cash or loan value exceeded the existing indebtedness, and in accordance with the provisions of the policy, the company granted a policy loan and calculated the duration of this extended period upon the basis of the mathematical formula set forth in the policy. According to their calculations then made, this cash or loan value was sufficient to extend the term of insurance to August 7, 1933. On July 7, 1933, the appellant notified the insured that his insur-

ance would terminate on August 7, 1933, because of the fact that the indebtedness of each policy would equal the cash value thereof as of such date. No further payments were made under the policies, and no further notices were given with respect to the termination of this insurance.

The insured died on October 3, 1933. The appellee contends that the policies in suit had not lapsed at the time of his death and did not lapse on August 7, 1933, because the notice mailed on July 7, 1933, was not in accordance with the provisions of the policy relative thereto. The provision of the policy, with reference to notice of termination, reads as follows:

> "Failure to pay any policy loan, automatic premium loan or interest thereon shall not avoid this Policy unless the total indebtedness shall equal or exceed the full amount available hereunder and in no event, until thirty days after notice thereof shall have been mailed to the last known address of the Insured, and of the Assignee, if any."

From a consideration of these policy provisions above quoted, it is at once apparent that this policy in suit would not immediately lapse or become forfeited by reason of the nonpayment of the premium. The company expressly agreed to continue this insurance in force in the event of a default of premium payment for such period as a cash surrender value of the policy at such premium due date would purchase. During this additional period of time in which the policy was continued in force, the premium last due could be paid, but if this premium was not paid during such period then "all liability of the company on this policy would thereupon terminate, subject to notice as hereinafter provided." The only notice mentioned in the policy is the thirty-day notice provision above quoted. The question, therefore, presented is whether or not this

notice may be given prior to the date of expiration of the extended insurance period.

This notice which the insurance carrier is required to give is a notice of forfeiture of the policy contract for failure to pay the automatic premium loan. Since this premium loan could be paid at any time during the period of the extended insurance, it is apparent that no cause for forfeiture could arise until the expiration of the extended insurance period. This question was before the Supreme Court of Kansas in the case of *Priest* v. *Life Association* (1916), 99 Kan. 295, 301, 161 P. 631, 633. The court said:

"... the notice required is not notice of a contingent intention to forfeit which may possibly be entertained in the future. It is notice of an actual intention to forfeit because premium has not been paid. Such an intention can not exist until cause for forfeiture arises. Cause for forfeiture can not arise during the time within which payment may rightfully be made. That time must expire and the premium be unpaid."

The Supreme Court of Kansas accordingly held that the thirty days' notice cannot be given until the expiration of the time in which payment could rightfully be made. See also *Cunningham* v. *Insurance Co.* (1920), 106 Kan. 631, 189 P. 158.

A similar question was before the Supreme Court of Iowa, *Andrews* v. *Union Mut. L. Ins. Co.* (1935), 220 Iowa 719, 722, 263 N. W. 255, 256. This policy contained the provision that: "Failure to pay premium, premium note, or interest thereon shall not void this contract until thirty days' notice shall have been mailed to the last known address of the insured." The court said:

"The notice therein referred to obviously is not a notice that the premium will become due. A requirement for such a notice could be complied

with by giving notice at the time the policy was issued as to the time when all subsequent premiums would become due. Indeed, the policy does that very thing, because in the paragraph quoted herein it is stated that:

" 'Notice of every premium that may become due and payable hereunder is hereby given and accepted by the delivery of this contract.'

"So that the notice referred to in the latter part of the same paragraph must be something different from a notice that a premium will become due. It must, therefore, be a notice that a premium is due or is past-due. In other words, the notice contemplated by that language is a notice, in substance, that a premium is in default. The obvious purpose of such a provision is to give to the insured thirty days after the mailing of such notice in which to avoid the cancellation of the policy."

In the case of *Paul* v. *The Columbian National Life Ins. Co.* (1940), 125 N. J. L. 350, 352, 15 A. (2d) 636, 638, the policy contained a provision that "if at any time when the total indebtedness against said policy, including any unpaid premiums, together with interest thereon, shall equal or exceed the loan value of said policy, default shall be made in the payment of this loan or any interest thereon, the said policy shall (provided thirty-one days' notice has been mailed to the last known address of the insured) be canceled by said company and all insurance thereunder terminated." Being unable to meet his third annual premium, the insurance company agreed to loan the assured the amount of the cash surrender value of the policy, and the assured executed a promissory note for the balance required to make up the third annual premium. The note contained a provision that if not paid when due, the policy would lapse without further notice. The note was not paid when due and no notice of forfeiture was given. The court held that since the insurance company failed

to give the required statutory notice of forfeiture the termination of the policy was improper.

The rule has been tersely stated as follows:

". . . in the absence of waiver or estoppel, it is generally agreed that a notice of cancelation to the insured must be clear, unconditional, and unequivocal, and that a mere expression of a purpose or intention to cancel in the future is not sufficient; that is, it must be one of actual cancelation, not of future conditional cancelation, or of doubtful meaning as to time or purpose." Couch on Insurance, Vol. 6, § 1442.

In the light of these rules, it is my opinion, therefore, that the appellant was required to give the notice of forfeiture of the policy for nonpayment of premium or policy loans on or after the date of such forfeiture. A notice given prior to such date of forfeiture would not serve the purposes intended by the provisions of the policy and the statute.

It may be further noted that this provision of the policy, with reference to notice of forfeiture, while required by statute to be inserted in standard policies, is not required in contracts covering substandard risks. Since this provision of the policy is voluntarily assumed by the appellant, any ambiguity therein contained should be resolved in favor of the insured and against the insurer. *Maxwell* v. *Springfield, etc. Ins. Co.* (1920), 73 Ind. App. 251, 125 N. E. 645.

It is my opinion, therefore, that since the time for the giving of the notice of termination of this policy is not free from doubt, that construction should be adopted which is most favorable to the appellee. Such a construction would require that the notice of termination of the contract of insurance could not have been given by the appellant until August 7, 1933.

It must follow, therefore, that the notice given by

the appellant on July 7, 1933, was not in accordance with the provisions of the contract, and was, therefore, insufficient to terminate the policy.

For these reasons, it is my opinion that the petition for rehearing should be granted and the opinion of this court should be reconsidered.

NOTE.—Reported in 37 N. E. (2d) 698.