## WADDELL v. NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, OF BOSTON, MASSACHUSETTS.

[No. 11,866. Filed October 8, 1924. Rehearing denied February 3, 1925. Transfer denied May 22, 1925.]

1. INSURANCE.—*Contract of insurance governed by the law of state where it is executed and delivered and first premium paid.*—As a general rule, a contract of insurance is governed by the laws of the state where it is executed and delivered and the first premium paid. p. 213.

2. INSURANCE.—*Terms of policy containing substantial provisions of the statute determine the rights of parties thereto.*—Where the provisions of an insurance policy are as favorable to the insured as the provisions of §4622a Burns 1914, Acts 1909 p. 251, prescribing the contents of life insurance policies, the provisions of the policy will determine the rights of the parties thereto. p. 213.

3. INSURANCE.—*In determining the amount and term of extended insurance due the insured on default in premium payment, indebtedness of insured not deducted from cash value of insurance after it has been deducted from the face value of the policy for extended insurance.*—Since clause 10 of §4622a Burns 1914 requires all Indiana life insurance policies to contain a provision that in default of premium payment after premiums have been paid for three years, the insured shall be entitled to extended insurance for the face amount of the policy less any indebtedness from the insured or for the full term that the cash value of such insurance would purchase, after deducting such indebtedness, the company would not be entitled to make such deduction from the face value of the policy and from the cash value in determining the term of extension. p. 214.

From Morgan Circuit Court; *Alfred M. Bain,* Judge.

Action by Maude Waddell against the New England Mutual Life Insurance Company of Boston, Massachusetts. From a judgment for defendant, the plaintiff appeals. *Reversed.* By the second division.

*A. W. Fenstermacher* and *W. B. Waddell,* for appellant.

*Charles Martindale,* for appellee.

NICHOLS, P. J.—Action by appellant against appellee upon an insurance policy.

The complaint was in six paragraphs, to each of which appellee answered in two paragraphs, the first a general denial, and the second an affirmative answer, to which appellant filed a demurrer which was overruled. There was a trial by the court which resulted in a finding and judgment in favor of appellee. Appellant's motion for a new trial was overruled. This ruling and the action of the court in overruling the several demurrers to the said second paragraph of answer are assigned as error.

The facts averred and in evidence, and which are undisputed, so far as we need to consider them, are, in substance, that one Courtney of Boswell, Indiana, by his application was insured under a policy of insurance dated November 10, 1913, whereby, in consideration of the payment in advance of $337.50 and of the payment of a like sum on or before the tenth day of November in each year thereafter during the life of said Courtney, appellee agreed to pay, upon proper proof of the death of the insured, $5,000 to his daughter, appellant herein, less any indebtedness to the company on account of or secured by the policy. The insured paid the first and second annual premiums but, in November, 1915, when the third annual premium became due, in payment of that premium, he applied the amount to which he was entitled as distribution (dividend) under said policy, paid a portion of the premium in cash, and, for the remainder of the premium, executed and delivered to appellee three promissory notes, all dated November 10, 1915, each note being for $84, all aggregating $252, said three notes being due respectively in three, six and nine months after date, with interest at six per cent. per annum. He paid the first two of said notes, due in three and six months after date, but he did not pay

and never has. paid the third of said notes. When the next annual premium, due November 10, 1916, became due, he defaulted in the payment of said premium, and paid no further premiums upon said policy. On November 10, 1915, there was due the insured under said policy the sum of $58.75 as his share of the apportionment of the surplus of the company distributable to said policy. From the reserve on the policy November 10, 1916, the company deducted the indebtedness evidenced by said premium note for $84 and the interest thereon $5.04, aggregating $89.04, and added thereto the said amount due the insured as his share of the apportionment of the surplus, being said $58.75, the net cash value of the policy so found by appellee being $450.46, which sum appellee applied to the purchase of $4,970 of extended term insurance for a period of three years and fifty-nine days. The amount of extended insurance was determined by adding to the face value, $5,000, the surplus $58.75 and deducting therefrom the amount of the note $89.04, making $4,969.71 or, in round numbers, $4,970.

Appellee paid to the insured during his life time the share of the surplus distribution to said policy in the years 1917, 1918 and 1919, and he died on March 3, 1920, the policy having expired by appellee's method of adjustment on January 8, 1920. It is stated by appellee and contended by appellant that, "The whole issue in this case is whether the company (appellee) had the right, in calculating the cash value of the policy on November 10, 1916, to be applied as a net single premium to the purchase of extended insurance, from the anniversary date last passed for its face amount including any additions and less any indebtedness hereon or secured hereby for such time as the then cash value together with any accumulated surplus held at interest will purchase as a net single premium, to deduct the

premium note of $84.00." If appellee had such right, the several demurrers and the motion for a new trial were properly overruled. Otherwise, they should have been sustained. The court held that the company had such right and it was proper to make such deduction of said note in calculating the cash value so to be applied as a net single premium to the purchase of extended insurance.

It is provided in the policy with reference to non-forfeiture that after three full annual premiums have been paid, the holder of the policy is entitled to three options. The first is to take the cash value; the second is to take paid-up insurance; the third is to take extended insurance. In this case, the insured having in his application elected in case of default to take the third option of extended insurance, we have only to consider the contract in relation to this provision which, so far as here involved, is as follows:

"THIRD. EXTENDED INSURANCE.—To have the policy continued as extended insurance from the anniversary date last past, for its face amount, including any additions, and less any indebtedness hereon or secured hereby, for such time as the then cash value, together with any accumulated surplus held at interest, will purchase as a net single premium, but without the right to loans. Such extended insurance shall have a cash surrender value and shall participate in the annual distribution of surplus, the share apportioned thereto to be payable in cash."

Section 144 of ch. 175 of the General Laws of Massachusetts makes provision for a third option as follows: "(c) have the policy continued in force as extended term insurance from the anniversary date last passed for its face amount, including any outstanding dividend additions and less any indebtedness thereon or secured thereby, but without the right to loans." And in Indiana, §4622a Burns 1914, Acts 1909 p. 251, such an op-

tion is provided for in the following language: "(10) That in the event of the default of premium payment after premiums have been paid for not less than three years, the insured shall be entitled to extended insurance shown in the table of values and options for the end of the last year for which full annual premiums shall have been paid: Provided, That any unpaid note given for premium and any existing indebtedness to the company on account of or secured by the policy shall reduce the amount or term of such extended insurance in the ratio of such indebtedness to the net value of such extended insurance."

Appellee contends that the insurance policy is a Massachusetts contract and as such controlled by the statute of that state. While we do not deem it important to determine this question in reaching a decision in this case, we are not in harmony with the contention. It appears by averment and proof that the policy was delivered to the insured in Indiana, at which time the first premium was paid, and that the policy was not to be effective until such delivery and payment when the insured was in good health. The rule that governs under such circumstances is thus stated in 25 Cyc p. 747: "The general rule is that the contract of insurance is governed by the laws of the state where it is executed and delivered and becomes a binding contract so far as such laws relate to the nature, validity, and interpretation of the contract." Numerous authorities are cited to sustain the rule. There is no provision in the policy that excepts it from the general rule. But the Indiana statute, as well as the Massachusetts statute, was enacted to protect the insuring public, and the provisions of the policy in suit being at least as favorable to the insured, and to appellant, as the statute, and containing the substantial provisions thereof, its terms will determine the rights

of the parties. As was held in *Aetna Life Ins. Co.* v. *Hardison* (1908), 199 Mass. 181, 85 N. E. 407, such provisions of the statute are intended for the protection of the policy holders and if the policy contains them in substance, their form may be varied and additional provisions inserted beneficial to the insured, provided the statutory requirements are satisfied and left undiminished by that which is added.

Appellee urges that under the provision of clause 10, §4622a, *supra,* quoted above, any existing indebtedness shall reduce the term of the extended insurance, and, acting on such interpretation, has reached the result above set out, and thereby caused the policy to expire before the death of the insured. But it must be observed that the provision is in the alternative. The existing indebtedness shall reduce the *amount or term* of the extended insurance. An examination of the provisions of the policy as to extended insurance, above set out, discloses that the insured was entitled to extended insurance for the face amount of the policy, including any additions, and *"less any indebtedness hereon or secured hereby."* (Our italics.) There is, then, an express provision for the reduction of the face amount of the policy by the amount of the indebtedness, and there is no provision whatever for deducting the existing indebtedness from the cash value in computing the term. It is significant that the first and second options provide for deducting from the cash value of the policy any indebtedness while the third option, the one here involved, does not so provide. Indeed, it should not so provide, for in that event, appellee would be receiving, as by its method of adjustment it did receive, a double credit for the indebtedness, one from the face amount of the policy, in determining the amount of extended insurance, and the other from the cash value in determining the term

of extension. This would manifestly be unfair. Holding, as we do, that the court in determining the term of extended insurance erred in deducting the indebtedness, being the amount of the note and interest from the cash value of the policy, there was error in overruling the respective demurrers and the motion for a new trial.

There being no occasion for a new trial, the judgment is reversed, with instruction to the court to enter final judgment for appellant and against appellee in harmony with this opinion.