GALLAGHER, ADMINISTRATOR *v.* MUTUAL LIFE INSURANCE
COMPANY OF NEW YORK

[No. 27,625.   Filed October 9, 1941.]

*J. W. Lindley* and *Thomas J. Gallagher,* both of Sullivan, for appellant.

*Louis W. Dawson,* of New York City, *Hays & Hays,* of Sullivan, and *Thompson, O'Neal & Smith,* of Indianapolis, for appellee.

*Clair McTurnan, Herman L. Ridenour* and *Gavin & Gavin,* all of Indianapolis (*William R. Higgins, Lawrence H. Hinds,* and *James P. Robinson,* all of Indianapolis, of counsel) amicus curiae.

RICHMAN, J.—Appellant filed this action to recover on an insurance policy on the life of William M. Medsker. The trial court made special findings of fact with conclusions of law to the effect that appellant take nothing and entered judgment accordingly. Error is assigned on the conclusions.

The policy was issued Jan. 17, 1919, while insured was a resident of Indiana. Appellee therein agreed, in consideration of an annual premium of $91.75, to pay the estate of insured upon his death $2500 less any indebtedness to the company. The policy contains a table of cash, loan, and paid-up life insurance values based upon a "policy for $1000." Immediately preceding this table the policy states:

"As this Policy is for $2500, the values i.e. the cash, loan, or paid-up life insurance, will be 2 & ½ times the amounts stated in the table; the term, i.e. the continued insurance will be for the period stated irrespective of the amount of the policy.

"If there be any dividend additions to the credit of the Policy, or if the premiums have been paid for any part of a year beyond the last preceding anniversary, the values and, in certain cases, the term will be increased; if there be any indebtedness on the Policy, the values and the term will be decreased; any dividend deposits will also be payable in cash; the figures contained in the table represent the actual amounts available after deduction of the surrender charge, if any, but assuming no dividend additions or indebtedness."

The table shows that "after the policy had been in force thirteen years," (that is, on Jan. 17, 1932) the cash value of the $2500 policy was $658.10 and the "paid-up

non-participating term (continued) insurance" was for twelve years and forty-five days.

The controversy centers in the provisions for continued insurance after default in payment of premiums.

The pertinent clauses are:

"After three full years' premiums shall have been duly paid, the owner, not later than three months after any default in payment of premium, may elect one of the following options:

"(a)   to surrender this Policy for its cash value less any indebtedness to the Company hereon (this balance is hereinafter referred to as the net cash value) ; or,

"(b)   to have the insurance continued in force from the date of such default as non-participating term insurance, for an amount equal to the face amount of this Policy and any outstanding dividend additions less any indebtedness to the Company hereon; or,

"(c)   to surrender this Policy for non-participating paid-up life insurance payable at the same time and on the same conditions as this Policy.

.   .   .

"The term for which the insurance will be continued under the option (b), or the amount of the paid-up life insurance obtainable under option (c), will be such as the net cash value obtainable under option (a) will purchase at the attained age of the Insured at date of default when applied as a net single premium.

"In the event of default in payment of Premium, if this Policy shall not, within three months after such default, have been surrendered to the Company at its Home Office for its cash value as provided in option (a), for paid-up insurance as provided in option (c), the insurance will be automatically continued as provided in option (b)."

Premiums were paid for thirteen years. Medsker, after procuring extension of time, defaulted in payment of the fourteenth premium due Jan. 17, 1932. He then

owed the company $625.14. A dividend of $30.65 was allotted to the policy on that date. Of this dividend $24.64 was used by him as consideration for the extension of time, leaving $5.01 cash value which seems to be the equivalent of an $8.00 reserve for "dividend additions." He made no election. The policy was automatically continued in force as provided in option (b).

Appellee's computation was as follows: To the cash value specified in the table, $658.10, was added the cash value of the dividend addition, $5.01, making a gross cash value of $663.11 from which was deducted the indebtedness, $625.14, leaving the net cash value, $37.97. It appears from appellee's brief that there was a voluntary addition not required by the policy but given, in accordance with appellee's practice, as "that part of the extension fee which represented the net single premium for six months of term insurance. The amount voluntarily added to the net cash value was $17.77, thereby increasing the net cash value of $37.97, provided by the terms of the policy, to $55.74."

"The amount of the term insurance to be continued was computed by adding to the face amount of $2500 the balance of the 1932 dividend addition outstanding of $8.00, making a total of $2508, and substracting therefrom the indebtedness of $625.14, leaving a net amount of $1882.86. When all transactions were completed this amount was rounded off to the higher dollar; that is, to $1883."

"The total amount of $55.74, was then applied as a net single premium to purchase extended term insurance of $1882.86 for as long a period as $55.74 would provide when applied as a net single premium at the Insured's attained age of 56 years on the basis of the American Experience Table of Mortality and 3% interest. On that basis, the cost of 1 year's term insurance at age 56 is $19.30 per $1000, or $36.34 for $1882.86. On the same basis the cost of 2 years' term insurance at age 56 is $39.01 per $1000, or $73.45 for $1882.86. The

amount of $55.74 was therefore, sufficient to purchase term insurance of $1882.86 for 1 year, plus that additional fraction of another year which the excess of $55.74 over the cost of 1 year's term insurance bore to the difference between the cost of 2 and 1 years' term insurance, or, in other words, 1 year plus that fraction of 365 days which $19.40 bore to $37.11, or 1 year and 191 days. Term insurance of $1883 was, therefore, continued for a period of 1 year 191 days from January 17, 1932, which expired July 27, 1933."

Medsker died June 4, 1934, when the insurance so calculated was no longer in force. Hence the conclusion of the trial court against appellant.

The provisions of chapter 95 of the Acts of 1909 were in force when the policy was issued in 1919. Section 5 (p. 251) states that "No policy of life insurance shall be issued or delivered in this state . . . unless the same shall provide . . ." then follow 13 subsections, each containing a provision intended to protect the interests of a policyholder. The pertinent part of the tenth subsection reads:

"(10)   That in the event of the default of premium payment after premiums have been paid for not less than three years, the insured shall be entitled to the extended insurance shown in the table of values and options for the end of the last year for which full annual premiums shall have been paid: *Provided,* That any unpaid note given for premium and any existing indebtedness to the company on account of or secured by the policy shall reduce the amount or term of such extended insurance in the ratio of such indebtedness to the net value of such extended insurance: *and, Provided,* That the policy may be surrendered to the company at its home office within one month from date of default for a specified cash value at least equal to the sum which would otherwise be available for the purchase of extended insurance as aforesaid:"

The first proviso has been noticed in three cases, *Waddell* v. *New England etc., Ins. Co.* (1925), 83 Ind. App. 209, 147 N. E. 816; *Metropolitan Life Insurance Co.* v. *Winiger* (1939), 215 Ind. 120, 17 N. E. (2d) 86; and *New England Mutual Life Ins. Co. of Boston, Mass.* v. *Olin* (1940), (C. C. A. 7th) 114 F. (2d) 131, all holding that the policy may contain provision by which the indebtedness may be used to reduce the term or to reduce the amount but not both. It is asserted that this policy uses the indebtedness to reduce both term and amount. There is substantial argument in the briefs that only the term is reduced but this we need not decide. Assuming that both are reduced what are the consequences? We look further into the statute.

Section 8 reads:

> "No policy of life insurance shall be issued or delivered in this state by any life insurance company until the form and title of same shall have been filed with the auditor of state; and if the provisions of such policy violate any law of this state, the auditor of state shall disapprove such form, and after the auditor of state shall have notified any such company of any such disapproval of any such form, it shall be unlawful for such company to issue such policy in the form so disapproved. The action of the auditor of state shall be subject to review by any court of competent jurisdiction."

Naught appearing to the contrary we may assume compliance with this provision and that the Auditor of State did pass this form of policy. The test by which he is guided is found in the next section:

> "The policies of a life insurance company, not organized under the laws of this state, may, when issued in this state, contain any provision which the laws of the state, . . . under which the company is organized prescribes shall be in such

policies and the method of valuation of such policies required by the laws of the state, . . . where such company is organized, shall be accepted by the auditor of state of this state, . . . *Provided,* That the provisions of the laws of such state, . . . are shown to the satisfaction of the auditor of this state to *as carefully safeguard the policy holders as do the laws of this state."* (Our italics.)

This test is not whether the provisions of the policy are in exact or substantial compliance with the law of Indiana but whether they as carefully safeguard the policyholders as do the laws of this state.

This, perhaps, is equivalent to saying that the policy may be approved if its provisions are as favorable to the insured as the provisions specified in the Indiana statute. We see no reason why the same test should not be applied by the courts.

Extended insurance under the alternative statutory methods is computed as follows:

In either case the reduction must be in the ratio of $625.14 (indebtedness) to $658.10 (cash value stated in table). In other words either the amount or term must be reduced in the ratio, .94992. If the amount is reduced, the reduction is .94992 times $2500 or $2374 leaving extended term insurance of $125.20 for 12 years and 45 days. If the term is reduced the reduction is .94992 times 4425 days (12 years, 45 days) or 4203 days, leaving extended term insurance of $2500 for 222 days. On the basis of the American Experience Table of Mortality and 3% interest, the cash value of the former is $32.91 and of the latter $29.35 ,each less than the net cash value of the extended insurance as determined by the policy, $37.97, or as granted by the company with its voluntary additional allowance of $17.77. If "per day per dollar" cost or value be the basis of comparison it is apparent that appellee's policy as care-

fully safeguards the policyholder as do the laws of this state.

The only alternative appearing in the record is to treat the two statutory and the policy methods of calculation as three options on the part of the insured's beneficiary. But it will not do to await the death of the insured and then determine which of the three methods will give his beneficiary the largest sum. Such an option would be equivalent to one grant of extended insurance (using the figures in this case) of $2500 for 222 days, $1883 for the next 334 days, and $125 for the remainder of the 12 years and 45 days. The comparative values must be determined as of the date the policy lapsed and may not be permitted to abide the choice of the beneficiary after the uncertain event of the insured's death has been made certain.

Cases may arise where other considerations than value may be necessary to determine whether the policy furnishes safeguards equal to those of the statute. But in this case no other reasonable considerations have been suggested and we can think of none. Life insurance values are based on mortality tables that scientifically incorporate all vital statistical information throughout the United States. One company's experience does not determine the value fixed by its policy. In standard policies issued pursuant to the regulatory laws of New York and other eastern states where many of the insurance companies are domiciled there is uniformity of values because of the usual requirement that the American Experience Table of Mortality be used to determine reserves and net single premiums. Such values, we think, may safely be used to determine whether the questioned provisions of appellee's policy are as favorable to the insured as the provisions specified in the statute, or, to use the language of

the statute, "as carefully safeguard the policy holders as do the laws of this state."

Appellant's motion for a new trial presents the assigned error that the decision is contrary to law because the making of the last loan four days after the 1931 premium was due was "a new transaction which is outside and independent of the insurance contract, and the amount of such loan can neither be deducted from the amount or term." We find no merit in this contention. The policy was still in force with its 31 days of grace. It had previously been assigned to the company as security for the first loan. The second was to cover interest on the first and an additional premium. That the policy was not again assigned was immaterial. The whole amount was "indebtedness on the policy" or "indebtedness on account of or secured by the policy" and was deductible to arrive at the net cash value under the policy and the net reserve under the statute.

Finding no error, the judgment is affirmed.

NOTE.—Reported in 36 N. E. (2d) 780.