OLIN *v.* PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT.

[No. 16,876. Filed February 25, 1943.]

*Herman L. Ridenour,* of Indianapolis, for appellant.
*Robert A. Adams,* of Indianapolis, for appellee.

DOWELL, J.—Appellant filed this action to recover on a Twenty Premium Payment life insurance policy issued by the appellee on the life of Walter G. Olin, appellant's husband. The trial court made special findings of fact and stated conclusions of law thereon to the effect that appellant take nothing and entered judgment accordingly.

Error is assigned upon the 1st, 2d, 3d, 4th and 5th conclusions and upon the overruling of the appellant's motion for a new trial.

The insurance policy was issued October 15, 1920, while the insured was a resident of Indiana and all transactions in connection with said policy were done, had and performed within the State of Indiana.

The provisions of said policy pertinent to the issues are as follows:

"THE PHOENIX MUTUAL LIFE INSURANCE COMPANY OF HARTFORD, CONNECTICUT, AGREES TO PAY TO the executor, administrator or assignee of the insured, . . . The Sum of TWO THOUSAND Dollars upon receipt at its Home Office of this policy duly discharged together with due proofs of the death, while this policy is in force, of WALTER G. OLIN . . .

"This contract is made in consideration of the application herefor and of the PREMIUM of Eighty-six & 32/100 Dollars payable on the 15th day of each October until twenty full years' premiums shall have been paid or until the death of the Insured, if prior thereto, . . . The Privileges and Provisions on the second, third and fourth pages hereof are a part of this policy. . . .

"PRIVILEGES AND PROVISIONS

"1. Payment of Premiums. All premiums are payable in advance at the Home Office, in Hartford, Conn., but will be accepted if paid to an agent of the Company who holds the Company's receipt therefor, separate from the policy, and signed by

an executive officer. The insured and assigns may change the premiums from annual to semi-annual or quarterly or vice versa.

"2. Days of Grace. This policy shall not take effect until the first premium is so paid, and if any subsequent premium be not paid when due, or within thirty-one days thereafter, during which time this policy shall remain in force then this policy shall immediately lapse as of the date when the defaulted premium was due and shall have no value except as hereinafter provided. . . .

"5. Annual Participation in Surplus. (a) At the end of the first and each succeeding policy year, this policy, while in force, will be credited with its share of the divisible surplus which the Company will annually determine and account for in a general distribution of surplus. Such apportionment of surplus will not be conditioned on the payment of any subsequent premium, and will be applied in any one of the following methods which may be changed by the insured or assigns; if no choice is made the first method will be employed.

"(b) First: To be paid in cash (without interest) to the insured or assigns.

"(c) Second: To reduce the premium due hereunder during the succeeding year; if none are due the fourth method will be employed.

"(d) Third: To purchase, at net rates by the American 3% Table, participating paid-up insurance additions, payable with this policy.

"(e) Fourth: To accumulate at compound interest, at such rate as may be assumed in the distribution of surplus for that year (guaranteed to be at least 3% per annum). . . .

## "DESCRIPTION OF NON-FORFEITURE VALUES

"The Reserves and Premiums on which these values are based are computed on the 3% American Experience Table. While the insured or any assignee under this policy is a minor, no loan can be made by the Company (except for the purpose of paying premiums and interest) and a cash value

will require a release by a duly appointed legal guardian of such minor.

"13. Cash Value. At any time after the premiums for two years have been paid the Company will purchase this policy for its cash value on satisfactory release by the insured and assigns and surrender at the Home Office while it is in force, or within the thirty-one days of grace hereinbefore provided. Such cash value at the end of a fully paid policy year is the then terminal reserve for each $1,000 of the face amount of insurance under this policy and under any insurance additions credited to it, together with any cash dividends and Premium Deposit Fund then credited hereto, less any indebtedness to the Company against this policy, and, if surrendered before the tenth policy year, less a surrender charge of 1% of the amount of such insurance; (if surrendered subsequently no surrender charge will be made). At any time during a fully paid policy year such cash value is the terminal value at the end of such year discounted for the unexpired portion thereof at the rate of 3% per annum.

"14. Participating Paid-up Insurance. Or, in lieu of such cash value, upon satisfactory request by the insured and assigns, the Company will issue a participating paid-up life policy, (with cash value at age 85 equal to the amount insured), for such amount as said cash value, less the amount of the Premium Deposit Fund then credited hereto, if any, will be used as a single premium at the company's gross rates to increase the amount of such paid-up policy.

"15. Automatic Extended Insurance. If this policy shall lapse and shall not have been surrendered to the Company, the insurance without any action by the owner will be automatically extended from date to lapse, if such lapse occurs two years or more from the date hereof, by applying the cash value at such time as a net single premium to purchase non-participating term insurance for the face amount of any dividends or insurance additions and any Premium Deposit Fund then standing to the credit hereof and decreased by the amount of any indebtedness to the Company on

account of or secured by this policy. If such lapse occurs before the end of the second year from the date hereof, any cash dividend or the cash value of any additions and any Premium Deposit Fund then credited to this policy will be automatically applied to purchase term insurance in a similar manner.

"16. Values of Paid-up and Extended Insurance. Under the same conditions as those expressed in Sections 13 and 17 hereof, the Company will purchase or loan upon, for the full amount of the reserve thereunder, any extended insurance or paid-up insurance issued in lieu of this policy.

"17. Policy Loans. At any time while this policy is in force, upon its proper assignment by the insured and assigns and on its sole security, the Company will loan, at the rate of 6% per annum, any amount up to the cash value guaranteed at the end of any policy year provided the premiums and interest to the end of the designated year are paid in cash or deducted from the proceeds of the loan. After endorsement of the loan on the policy it will be returned to the party from whom it has been received. Any interest not paid in cash will be charged against this policy so long as the total indebtedness against it does not exceed the cash value hereunder. The loan may be repaid at any time while this policy is in force, but non-payment of loan or interest will not void this policy until the indebtedness to the Company against this policy, with interest, shall equal or exceed the cash value hereunder, when this policy shall immediately cease and become void; but such termination shall not take effect until at least thirty-one days after the Company has mailed notice of the same to the insured and assignee of record, if any, at their last known post office address.

"18. Premium Liens. In Lieu of granting Automatic Extended Insurance in event of default in the payment of any premium or interest payment falling due two years or more from the date hereof, on receipt of a satisfactory request in the application herefor or from the insured and assigns at any time while this policy is in force, the Company will, until such request is satisfactorily revoked, keep this policy in force by charging up thereafter

against this policy each premium and interest payment falling due after two years from the date hereof as it becomes due (if it be not paid in cash) until such accumulated indebtedness, with interest, equals or exceeds the cash value hereunder, when this policy shall immediately cease and become void, subject, however, to the notice of termination as described in the preceding provision.

"19. Intermediate Values. The payment of a premium for a fraction of any policy year after the second will make a proportionate adjustment in the Non-Forfeiture Values of that year."

There follows a table of nonforfeiture values based upon $1,000 of insurance.

At the request of the insured the provision herein referred to as the Automatic Premium Liens provision was included in the policy. This request was never revoked by the insured.

The sixth, seventh, eighth and ninth annual premiums were unpaid and pursuant to the Automatic Premium Liens provision of the policy, the company applied accrued premium reduction dividends to the premiums due and charged the balances due against the reserves of the policy as premium loans. The insured's indebtedness by reason thereof, was on May 23, 1929, in the sum of $304.86 and at that time the insured repaid to the company $227.00 to apply thereon, reducing his indebtedness to $77.86.

On November 23, 1929, and to begin with the premium which matured October 15, 1929, the premium payment plan was changed from an annual to a quarterly basis, and said premiums were thereafter payable $22.90 quarterly beginning October 15, 1929.

On or about October 15, 1929, the insured paid appellee the first quarterly installment of the tenth annual premium and the interest on the indebtedness charged against the policy to and including October 15, 1929.

On December 24, 1929, the insured borrowed of appellee, on a Certificate of Loan duly executed by the insured, the sum of $385.

Thereafter the insured executed and delivered to appellee ten separate premium loan agreements for the payment of eleven quarterly premiums which matured on said policy, and four interest payments which matured on the indebtedness charged against the policy between and including September 26, 1930, and November 17, 1933, and the amount of said ten separate loans aggregated $300.57, of which sum $99.05 was applied to interest on the indebtedness charged against the policy reserves and $201.52 was applied to payment of premiums.

There was a total of thirteen and one-quarter annual premiums paid on said policy, and the total cash value thereof at the end of thirteen and one-quarter years, or on January 15, 1934, was $780.64.

The second quarterly installment of the fourteenth annual premium on said policy was not paid and no premiums whatever were paid on said policy after payment of the first quarterly installment of the fourteenth annual premium which matured October 15, 1933.

On January 15, 1934, appellee had charged against the reserves of said policy a total indebtedness of $990.43, upon which appellee computed interest at 6 per cent from October 15, 1933, to January 15, 1934, in the amount of $11.45, thus bringing the total indebtedness charged against the policy to $1,001.88 on January 15, 1934. As against this total indebtedness there was a credit of $227 paid by the insured on May 23, 1929, leaving a balance of $774.88 charged against the reserves of said policy as of January 15, 1934.

On January 15, 1934, appellee deducted the indebtedness charged against the policy as of said date, in said

sum of $774.88, from the total cash value of said policy, as of said date, in the sum of $780.64, and appellee then applied the difference between said indebtedness and the cash value, $5.76, as an automatic premium loan to continue said policy in force until February 18, 1934, in the principal sum of $1,225.12, being the face amount of the policy, .$2,000, less the indebtedness charged against the policy in said sum of $774.88.

On March 14, 1934, appellee mailed the insured a letter advising him that under the terms of the policy it could be continued in force through automatic premium loans, for the payment of premiums and interest payments, not paid in cash when due, only so long as the debt against the policy did not exceed its cash value, and that the indebtedness against the policy had exceeded its cash value on February 16, 1934, and that unless the indebtedness was reduced, or premiums paid, the policy would expire without value 31 days after the date of said letter, as provided in the automatic premium lien agreement.

The policy was never surrendered to appellee, by the insured, for its cash value or for participating paid-up insurance.

The insured died in the City of Indianapolis, Indiana, on February 6, 1936, and the cause of his death was one insured against in said policy.

On March 3, 1936, appellant, on behalf of herself and the other beneficiaries under said policy, notified appellee of the insured's death and demanded payment of the insurance provided by said policy.

On March 7, 1936, appellee notified appellant that said policy had terminated and that appellee was not liable under said policy for any sum or amount of insurance, and refused payment of any sum whatsoever under said

policy, and appellee never requested any other or further proof of loss or proof of death of said insured.

The court below found that in the absence of any indebtedness secured by the policy the entire or gross value thereof on January 15, 1934, in the sum of $780.64 would have purchased, pursuant to the nonforfeiture provisions of said policy, extended term insurance in the sum of $2,000 for a period of 22 years and 39 days.

The court below further found that taking into consideration the indebtedness secured by the policy on January 15, 1934, and the entire or gross cash value of said policy of $780.64 on that date and applying the ratio set forth in Indiana Acts of 1909, ch. 95, § 5, subsection 10, for the determination of extended insurance when policy indebtedness exists, the extended term insurance to which the insured would have been entitled on January 15, 1934, under said statute, would have been either (a) $2,000 insurance for a term of no years and 60 days, or (b) $14.76 insurance for a total of 22 years, 39 days.

But the trial court also found that section 18 of the policy, the same containing the "Automatic Premium Liens" provision thereof, became an operative part of the insurance contract and that this provision was valid and enforceable under the applicable law of Indiana.

The theory of the appellant is that the Automatic Premium Liens provision was illegal and void; that the policy lapsed for nonpayment of premium on January 15, 1934, and that it should have been continued in force as extended term insurance for the face amount less indebtedness for such time as the gross cash value would have purchased or until after the death of the insured on February 6, 1936.

Thus the real issue here involved is as to the legality of the Automatic Premium Liens provisions.

Chapter 95 of the Acts of 1909 is applicable here, the same being in force when the policy was issued in 1920. Section 5 of the Act provides: "No policy of life insurance shall be issued or delivered in this state . . . unless the same shall provide . . ." The subsections following contain provisions designed for the protection of policyholders.

Section 8 of the Act is as follows:

"No policy of life insurance shall be issued or delivered in this state by any life insurance company until the form and title of same shall have been filed with the auditor of state; and if the provisions of such policy violate any law of this state, the auditor of state shall disapprove such form, and after the auditor of state shall have notified any such company of any such disapproval of any such form, it shall be unlawful for such company to issue such policy in the form so disapproved. The action of the auditor of state shall be subject to review by any court of competent jurisdiction."

Section 9 of the Act provides:

"The policies of a life insurance company, not organized under the laws of this state, may, when issued in this state, contain any provision which the laws of the state, territory, district or country under which the company is organized prescribes shall be in such policies and the method of valuation of such policies required by the laws of the state, territory, district, or country where such company is organized, shall be accepted by the auditor of this state, . . . *Provided,* That the provisions of the laws of such state, territory, district or country are shown to the satisfaction of the auditor of this state to as carefully safeguard the policy holders as do the laws of this state."

The record being silent on the subject we assume that the Auditor of State passed and approved the form of policy which is the subject of controversy here,

his action in so doing being now before this court for review.

In determining the issue here presented we must test the provisions of the policy by the rule heretofore adopted by the courts of this State under the statute cited *supra,* i. e., *"Are the provisions of the policy here involved as favorable to the insured as the provisions specified in the Indiana statute?"* Gallagher, Admr. v. Mutual Life Ins. Co. (1941), 219 Ind. 35, 36 N. E. (2d) 780.

The statute here is silent as to Automatic Premium Liens provisions, nor has the legality of such provisions ever been called into question before the courts of this State. However, such provisions as incidental to main issues, have been before the courts and have not been criticized nor held invalid. *Bronson* v. *Northwestern, etc., Ins. Co.* (1921), 75 Ind. App. 39, 129 N. E. 636; *Lincoln National Life Ins. Co.* v. *Sobel* (1942), 110 Ind. App. 331, 35 N. E. (2d) 121; *New England Mutual Life Ins. Co.* v. *Olin* (1940), 114 F. (2d) 131, 136, 137 (1-7).

In the instant case the inclusion of the Automatic Premium Liens provision in the policy was optional. It provided that, "In lieu of granting Automatic Extended Insurance in event of default in the payment of any premium . . . on the receipt of a satisfactory request from the insured . . . the Company will until such request is satisfactorily revoked . . . keep this policy in force by charging up thereafter against this policy each premium, etc." This provision was included in the policy at the request of the insured. It could have been revoked at any time but was not. We must assume, therefore, that the provision, in the estimation of the insured, provided benefits and protection of greater value than those offered by

the Automatic Extended Insurance provision and that the insured desired to avail himself of such benefits and protection. Moreover, the insured, on May 23, 1929, repaid to the company the sum of $227.00 to apply on his indebtedness accrued by reason of premium loans previously made by the company under the provision and charged against the reserves of the policy, thus, in effect, reiterating his request for the continuance of the provision.

It is patent that the insured was aware of that which is plainly apparent to this court, i. e., that the Automatic Premium Liens provision of the policy would and did operate to continue the entire policy in full force and effect without variation in terms or conditions if, by inadvertence or neglect any premium was unpaid; that this included the continuance in effect of the accidental death benefits provision with double indemnity, of the disability provision providing for the payment of monthly income in event of disability; that reinstatement, medical examination and redetermination of insurability, in the event of lapse, were obviated by the operation of the provision; that by the payment of a premium or the repayment of all or a part of the indebtedness the policy would continue in force rather than expire at a definite time.

In comparison, the Automatic Extended Insurance provision would operate only to provide nonparticipating term insurance in accordance with the table of values contained in the policy.

We conclude, therefore, that the Auditor of State correctly passed and approved the policy here involved; that its provisions were as favorable to the insured as the provisions specified in the Indiana statute governing this case.

In the light of the conclusion reached by this court

as to the legality of the Automatic Premium Liens provision of the policy here involved other questions presented have no controlling force.

Judgment affirmed.

NOTE.—Reported in 46 N. E. (2d) 731.