**Paul E. BAUGE et al., Plaintiffs-Appellants,**

v.

**CROWN LIFE INSURANCE COMPANY, a Foreign corporation, Defendant-Appellee.**

No. 71-2781.

United States Court of Appeals, Ninth Circuit.

Dec. 21, 1972.

Nikolaus Albrecht (argued), Portland, Or., for plaintiffs-appellants.

James H. Clarke (argued), James C. Dezendorf, of McColloch, Dezendorf, Spears & Lubersky, Portland, Or., for defendant-appellee.

Before WRIGHT and CHOY, Circuit Judges, and LINDBERG, District Judge.*

PER CURIAM:

Appellants, as the beneficiaries of a fifty thousand dollar insurance policy on the life of their father Vernon C. Bauge, challenge the district court's determination that the policy lapsed for nonpayment of premiums prior to the death of the insured.[1] They make no contention that the premiums were paid beyond the date of the purported lapse, but argue rather that provision 12 of the policy required thirty days notice of the pending lapse as a prerequisite to its effectiveness. They argue in the alternative that, if no notice was required by the policy, appellee was estopped from lapsing the policy without notice by its course of dealings with the insured.

---

* The Honorable William J. Lindberg, United States District Judge for the Western District of Washington, sitting by designation.

1. The relevant provisions of the contract are reproduced in the appendix to this opinion.

Although the primary dispute concerns the interpretation of the written provisions of the insurance contract, the scope of review in this court is limited to a determination of whether the district court's decision was clearly erroneous. United States v. Ironworkers Local 86, 443 F.2d 544 (9th Cir. 1971), cert. denied 404 U.S. 984, 92 S.Ct. 447, 30 L. Ed.2d 367 (1971); Lundgren v. Freeman, 307 F.2d 104 (9th Cir. 1962). We conclude that it was not.

The policy in question was issued originally to North Powder Pine, Inc., as both policy owner and beneficiary. Bauge, the insured, was an officer and stockholder in the corporation. Under provision 4 of the policy, premiums were payable in advance commencing on the tenth day of October, 1958, and on the tenth day of each sixth month thereafter during the life of the insured.

On December 10, 1966, the corporation received a loan from appellee secured by the cash value of the policy pursuant to the terms of provision 13. The interest on this loan which fell due on October 10, 1968, was not paid and therefore was added to the principal of the interest-bearing loan, also pursuant to provision 13. The premium due on this date, furthermore, was not paid by the policy owner when due nor within the thirty-one day grace period permitted for premium payments by provision 4. However, since sometime prior thereto the insured had invoked provision 14 of the policy in writing, the amount of the premium was loaned automatically by appellee in payment of the premium, and the policy was charged with an additional indebtedness in the amount of the premium, secured, as was the existing indebtedness, by the cash value of the policy. On March 17, 1969, the beneficiary of the policy was changed to the appellants.

By October 10, 1969, loans and unpaid interest added up to such a high percentage of gross cash value that an additional automatic premium loan in the amount of a semi-annual premium would have resulted in total indebtedness in excess of cash value at the next premium due date. Under provision 14, therefore, premiums became due on a monthly basis. The net cash value which remained available to secure policy loans was sufficient to provide automatic premium payments for four months. When a monthly premium became due on February 10, 1970, and a loan for such amount would have resulted at the next monthly premium due date in an excess of total indebtedness over cash value, the premium was not paid. Instead, provision 14 automatically effected a loan in the exact amount which could be secured by the remaining net cash value for the purchase of a nonparticipating extended term policy which expired on February 22, 1970. Since the monthly premium due on the whole life policy on February 10 was paid neither directly by the policy owner nor indirectly by the appellee through a premium loan under provision 14, the coverage terminated for nonpayment of premiums under provision 4 at the close of the grace period, i. e. thirty-one days after February 10, subject to any prior notice requirement in provision 12. Appellee notified the policy owner on May 27, 1970, that the policy had lapsed. Bauge died the following August.

■ The principal issue raised by the parties is whether the "except as otherwise provided" language in provision 4 was intended to invoke paragraph 12 as an exception to the general rule, set out in provision 4, of forfeiture for non-payment of premiums. Appellee cites numerous cases holding that similar notice provisions do not apply to such forfeitures. None of these cases is precisely on point. We find it unnecessary, however, to resolve this issue since even a finding of applicability affords appellants no basis for relief.

The crucial question under provision 12 is whether the policy indebtedness

ever exceeded the cash value. Unless it did, no notice was required. Our discussion above regarding the mechanics of automatic premium loans should make it clear that anytime provision 14 has been invoked and continues in effect, as it did here, indebtedness can never exceed cash value. Simply stated, under provision 14 a premium is not charged as an indebtedness unless it is paid through a premium loan, and no such loan will ever be made where the policy indebtedness at the next premium due date would exceed cash value. The frequency of premium due dates changes from semi-annually to monthly, and eventually a non-participating extended term policy for a period of less than a month is purchased. The result is that indebtedness ultimately equals cash value but never exceeds it. Provision 12, therefore, did not require notice.[2]

■ We also have considered appellants' alternative argument that appellee is estopped from asserting any lapse of the policy by its course of dealings with the insured and have found it to be without merit.

Affirmed.

## APPENDIX

4. Payment of Premiums. Premiums are payable to the Company at the times stated on the first page of this policy. Thirty-one days of grace, during which period the policy will remain in force, are allowed for payment of all premiums except the first.

\* \* \* \* \* \*
\* \* \* \* \* \*

Should any premium or part thereof be not paid when due, this policy will, except as otherwise provided herein, immediately lapse and become void.

12. Indebtedness. Any indebtedness to the Company under this policy and any unpaid premiums for the current policy year shall constitute a first charge on any money payable under this policy. If at any time the aggregate indebtedness under this policy, including accrued interest, exceeds the cash value, this policy shall lapse and become void, but not until at least one month, not less than thirty days after notice thereof shall have been mailed to the last address of the applicant for this policy and of the assignee, if any, as recorded at the Company's Home Office.

13. Policy Loans. After this policy has a cash value, and while there is no default in premium payments, the Company will loan upon the sole security of this policy an amount not exceeding the cash value discounted at five per cent. per annum from the next premium due date (or from the end of the current policy year if no further premiums are payable), upon execution of the Company's form of loan agreement, and upon production of the policy for examination if required by the Company. The Company may defer the granting of a loan, other than a loan solely to pay a premium under this policy, for a period not exceeding six months after application for the loan is made.

All loans, whether made under this provision or under provision 14, will bear interest at a rate not exceeding five per cent. per annum, compounded annually. Interest will accrue from day to day on indebtedness and will become part of the indebtedness as it accrues. Interest which is not paid by the end of each policy year will be added to the loan and will bear interest.

14. Automatic Premium Loans. This provision will be operative only if a written request therefor has been made either in the application or subsequently while there is no default in the payment of premiums, and shall continue until

---

**2.** The use of the term "aggregate indebtedness" in provision 12 as opposed to "total indebtedness" in provision 14 does inject some ambiguity into the policy. Appellants do not argue, however, that this ambiguity affords them any basis for relief.

notice of revocation of such request is given to the Company.

The amount of any premium due and not paid before the end of the days of grace will be loaned automatically by the Company in payment of such premium and charged as an indebtedness secured by this policy subject to interest from the due date on the same terms as prescribed for policy loans, provided the total indebtedness will not exceed the cash value at the next premium due date. If the total indebtedness will exceed such value, and if the premiums are payable less frequently than monthly, the premium provisions of this policy shall be changed automatically to provide for monthly premiums (the monthly premium being .0875 times the annual premium, .17 times the semi-annual premium or one-third of the quarterly premium and monthly premiums will be loaned automatically as above provided. Upon the expiry of the days of grace following the monthly premium due date at which it first becomes impossible to loan the monthly premiums as above provided, option 3 of provision 15 automatically shall become effective. If the premium provisions of this policy have been changed automatically to provide for monthly premiums, they shall be restored automatically to the original provisions whenever the net cash value becomes sufficient to permit an automatic loan of an original premium as provided herein.

15. Non-Forfeiture Values. Upon written request within sixty days after the due date of an unpaid premium the Company will grant one of the following non-forfeiture values determined as at the due date of such unpaid premium in accordance with provision 16,

\* \* \* \* \* \*
\* \* \* \* \* \*

3. The policy may be continued as non-participating extended term insurance for an amount equal to the sum insured less any indebtedness, for such period as the net cash value will purchase in accordance with provision 16.