**FIRST UNITED LIFE INSURANCE COMPANY, Defendant-Appellant,**

v.

**NORTHERN INDIANA BANK & TRUST COMPANY, Plaintiff-Appellee.**

**No. 3–1281A320.**

Court of Appeals of Indiana, Third District.

Feb. 14, 1983.

Robert F. Peters, Lucas, Clifford & Holcomb, Merrillville, for defendant-appellant.

James L. Jorgensen, Karen L. Hughes, Hoeppner, Wagner & Evans, Valparaiso, for plaintiff-appellee.

GARRARD, Judge.

First United Life Insurance Company (the insurer) appeals from a summary judgment on liability and final judgment in favor of Northern Indiana Bank and Trust Company (the bank). The pertinent facts disclosed by the materials before the court follow.

On August 29, 1971 the insurer issued a term life insurance policy to Connie Parker as owner and beneficiary insuring the life of her husband, Richard Parker.

On January 11, 1972, in connection with procuring a loan from the bank, Connie Parker executed and delivered to the bank an assignment of her interest in the insurance policy. This assignment was executed on the insurer's form. Its terms were absolute. A copy of the assignment was received by the insurer.

On October 18, 1977, with the bank's consent, the insurance policy was converted from term insurance to ordinary life. Then on October 27, 1977 the Parkers borrowed $8700 from the insurer against the policy. The check for the loan proceeds was made payable to Connie Parker and the bank. The reverse side of the check contained an assignment of the insurance policy to the insurer as security for the loan. The check was not, however, indorsed by the bank. Instead the bank accepted the check and deposited the funds in Parker's business account upon the indorsement of Connie Parker alone.

On November 1, 1978, after several notices had been sent to Richard Parker concerning non-payment of premiums due on the policy and advising that the loan amount exceeded the cash surrender value of the policy, the insurer cancelled the policy. No notices were sent to the bank.

On November 20, 1979 Richard Parker died and on April 23, 1980 the bank commenced this suit.

On May 4, 1980 Connie Parker was convicted of involuntary manslaughter in the death of Richard Parker.

On February 11, 1981 hearing was held on the bank's motion for summary judgment. On the hearing date the insurer sought to amend its answer by adding as a defense the contention that no policy benefits were payable because Connie Parker intentionally killed her husband. The court denied this motion and granted summary judgment to the bank establishing liability. Subsequently it found the amount due on the policy to be $85,909.36.

In this appeal the insurer raises essentially three contentions. It claims that as a matter of law the policy was cancelled and no benefits were payable. It further asserts error in the court's refusal to permit it to amend its answer and in the court's failure to set off against the policy benefits the amount due on the policy loan.

The insurance policy issued to Parker provided that "[t]his Policy will terminate without value upon premium default unless otherwise provided herein." Other provisions afforded a 45 day grace period for late premium payments, a five year reinstatement period providing the insured was still alive, and a provision for automatic premium loans to keep the policy in force. The automatic premium loan provision called for delinquent premiums to be paid by the insurer and charged as a loan against the policy. It applied if the policy owner so elected (Parkers' did) and if the charging of the unpaid premium as a loan would not result in indebtedness in excess of the cash value of the policy.

A separate provision permitted loans to the policy owner upon the sole security of the policy in any amount not in excess of the loan value of the policy. The provision stated that, "Proper assignment of the Policy will be required before a loan is granted ...." The policy further provided concerning repayment of loans:

"If at any time the total indebtedness to us on this Policy equals or exceeds the cash value, this Policy shall terminate and become void, provided at least 31 days prior notice shall have been mailed to the last known address of the Owner and of any assignee of record at our Home Office." [1]

Under the terms of the policy, and as required by Indiana statutes, if the insurer wished to cancel Parker's policy upon the ground that the outstanding loan with accrued interest exceeded the cash value of the policy, it was required to give 31 days prior notice to both the owner, Parker, and to the bank as an assignee of record. It admittedly gave no notice to the bank.

The insurer argues that it did not cancel because the unpaid loans exceeded cash value. Rather it cancelled when and because the premium was unpaid at the expiration of the grace period. It urges it was entitled to do so, that it had no obligation to give notice to the assignee (bank) of cancellation

---

1. The policy provisions concerning policy loans and premium loans are in accord with Indiana statutory requirements. *See* IC 27–1–12–6(8); 27–1–12–8.

for non-payment of premiums and therefore the cancellation was effective more than a year before Richard Parker's death.

The bank responds with three alternative arguments.

First, it asserts that because the loans did equal or exceed the cash value of the policy *any* cancellation of the policy necessarily included an "overloaned" cancellation so as to trigger the notice requirement. It buttresses this view by pointing out that except for the outstanding loan, the automatic premium loan provision would have been available to pay the premium when Parkers did not.

Secondly, the bank asserts the assignment to it was absolute and unconditional and therefore it was entitled to an "owner's" notice before the policy could be cancelled for non-payment of premiums.

Finally, the bank urges that the prior loan to Parkers was not properly a loan chargeable against the policy. Thus, it is argued, the loan could not be utilized to reduce the cash value. The result would then be that the automatic premium loan provision should be applied to pay the delinquent premiums.

Judge McNagny considered the first question in *Great Horizons Development Corp. v. Massachusetts Mut. Life Ins. Co.* (N.D.Ind.1978), 457 F.Supp. 1066, *aff'd.* 601 F.2d 596 which involved our Indiana statutes and policy provisions substantially identical to those before us. Great Horizons owned the life insurance policy in question on the life of its corporate president. Over the life of the policy substantial use had been made of the automatic premium loan provisions so that when the monthly premium came due on March 28, 1975, the value remaining in the policy was insufficient to cover the entire premium. Great Horizons arranged with the insurer to pay by a separate check the balance between the maximum automatic premium loan and the premium amount due. After this premium was paid the total indebtedness on the policy, including interest due or accrued, equaled the value of the policy.

Judge McNagny found no Indiana cases on point[2] but considered several decisions from other jurisdictions. He concluded that a policy provision providing for lapse of the policy upon non-payment of premiums is separate and distinct from a provision requiring notice prior to voiding a policy in which total indebtedness equals or exceeds the value of the policy. Because the provisions are distinct, the policy will lapse according to its terms upon the non-payment of the necessary premium where there is no loan value available to trigger the premium loan provision. *See also Bauge v. Crown Life Ins. Co.* (9th Cir.1972), 473 F.2d 787; *Presentation Sisters v. Mutual Benefit Life Ins. Co.* (1971), 85 S.D. 678, 189 N.W.2d 452; *Loss v. Mutual Life Ins. Co.* (S.D.N.Y.1963), 230 F.Supp. 329; *Heuring v. Central States Life Ins. Co.* (1935), 230 Mo.App. 42, 87 S.W.2d 661; *Columbus Mutual Life Ins. Co. v. Hines* (1935), 129 Ohio 472, 196 N.E. 158; *Pacific Mutual Life Ins. Co. v. Davin* (4th Cir.1925), 5 F.2d 481.

We agree that this decision correctly states the law of Indiana. Accordingly, the existence of the provision requiring notice before the policy may be voided because it is overloaned will not prevent a lapse of the policy for non-payment of premiums.

The bank contends that since the assignment to it was absolute on its face, the bank was entitled to notice irrespective of the notice to assignees requirement for overloaned policy cancellations. Initially, the bank urges that the insurer was required to give notice before cancelling for non-payment of premiums. That is not a correct statement of Indiana law where, as here, the policy provides that it will terminate upon premium default at the expiration of the grace period.

---

2. *Lincoln National Life Ins. Co. v. Sobel* (1941), 110 Ind.App. 331, 35 N.E.2d 121, 37 N.E.2d 698 and *Olin v. Phoenix Mutual Life Ins. Co.* (1943), 113 Ind.App. 81, 46 N.E.2d 731 were distinguished because the contract language in them specifically required utilization of the notice procedure before forfeiting the policy after non-payment of premiums. 457 F.Supp. 1075.

The insurance statutes do not require that an insurer give notice before cancelling for non-payment of premiums. Instead they are concerned with securing to the insured any equity value in the contract when such a cancellation occurs. *See, e.g.,* IC 27–1–12–7.

Indiana decisions recognize that where the policy provides for automatic termination upon non-payment of premiums, the provision is enforceable, although waiver based upon the facts of the case may be readily found to exist. *Supreme Council Catholic Benevolent Legion v. Grove* (1911), 176 Ind. 356, 96 N.E. 159; *Lincoln Nat. Life Ins. Co. v. Sobel* (1941), 110 Ind.App. 331, 35 N.E.2d 121. It is therefore factually possible that the insurer could have been required to give notice before cancelling for non-payment of premiums. However, it is undisputed that the insurer did give such notice to Richard Parker, the person designated in the policy application to receive notices.

Turning to the bank's interest as assignee, we initially note our disagreement with the assertion that the court could not go behind the language of the assignment in determining the bank's interest. Even though the language of the assignment was absolute the insurer was entitled to prove that only a security interest was intended and created. 43 AM.JUR.2D, *Insurance,* Sections 803, 816; *accord, Singer v. Burcham* (1966), 140 Ind.App. 378, 216 N.E.2d 532.

While the language of the present assignment was absolute, it did not contain any express direction for sending notices to the assignee, nor does it appear that the bank separately requested that any notices be sent to it.

■ The general rule is that "[i]n the absence of any statute or contract of the insurer to the contrary or conduct of the insurer giving rise to a duty to notify the assignee, there is no duty on the insurer to notify an assignee of the policy of premiums or assessment due thereon." 5 Couch, *Insurance (2d)* Section 30:143, p. 677; *see also Sorenson v. National Life Ins. Co.* (1972), 56 Wis.2d 92, 201 N.W.2d 510 and numerous cases cited in footnote 1 thereof. On the other hand where the assignment is absolute and unqualified *in fact* so that the entire beneficial interest in the policy vests in the assignee and it is the assignee's obligation to make payments necessary to preserve the policy, then at least where the insurer has consented to the assignment, required notices should be given to the assignee. *McQuillan v. Mutual Reserve Fund Ass'n.* (1901), 112 Wis. 665, 87 N.W. 1069.

■ There was, therefore, a genuine issue of material fact concerning the nature of the assignment that precluded the court from properly granting summary judgment in favor of the bank on this theory.

We must turn then to the bank's assertion that the $8700 loan the insurer made in 1977 did not constitute a "policy loan." It is argued that if the assertion is correct then the policy retained its cash value with the result that the automatic premium loan provisions should be applied and the insurance found in force. The basis for this argument is the contention that to properly constitute a "policy loan" the insurer was required to take an assignment of the policy and that it failed to do so.

IC 27–1–12–6(8) provides:

"(8) That the company, at any time while the policy is in force, will loan, on the execution of a proper assignment of the policy, and on the sole security thereof, at a specified rate of interest (payable in advance if the company so elects), a sum, which, together with the sum of (a) previously existing indebtedness, if any, including interest thereon to the end of the current policy year and (b) interest to the end of the current policy year on the amount newly loaned, is equal to or, at the option of the insured, less than the cash surrender value at the end of the current policy year as provided for by the policy in accordance with the terms of section 151B [27–1–12–7] as amended by this act: Provided, That the company may, as a condition precedent to the making of such loan, and at its own option, require the payment of the unpaid bal-

ance, if any, of the premium or premiums for the current policy year, and may require the payment of interest in advance on the total loan to the end of the current policy year. The policy may provide that, if interest on the loan is not paid when due, it shall be added to the existing loan and become a part thereof and bear interest at the same rate as the loan. It shall further be stipulated in the policy that failure to repay any such loan or pay interest thereon shall not void the policy unless such total indebtedness to the company shall equal or exceed such cash surrender value at the time of such failure, nor until thirty [30] days after notice shall have been mailed by the company to the last known address of the insured and to the assignee, if any, if such assignee has notified the company of his address. No condition other than as herein provided shall be exacted as a prerequisite to any such loan. The company shall reserve the right to defer the granting of any loan, except when made to pay premiums on a policy or policies issued by it, for six [6] months after application therefor is made. The provisions of this subsection (8) shall not be required in term policies nor shall they apply to paid-up insurance issued or granted in exchange for lapsed or surrendered policies; . . . ."

In compliance with the statute the policy stated:

"While this Policy is in force (except as extended term insurance), we will lend on the sole security of the Policy any amount not in excess of the loan value. Any indebtedness to us on this Policy shall be deducted from the proceeds of the loan. The amount of any unpaid premium for the balance of the current policy year may also be deducted from the proceeds of the loan. Proper assignment of the Policy will be required before a loan is granted. We also reserve the right to require the Policy for endorsement before a loan is granted."

In addition, the automatic premium loan provision would apply "provided the resulting total indebtedness on the policy with interest shall not exceed the cash value . . . ."

Initially, we feel called upon to point out that life insurance policy loans are not in reality loans at all in the normal commercial sense. They are instead more accurately characterized as "advances" which merely reduce the amount the insurer will ultimately have to pay. 17 Couch, *Insurance (2d)*, Section 64:10, p. 181; 43 Am.Jur.2d, *Insurance*, Section 785, p. 849.

◼ In *Humphrey v. Commonwealth Life Ins. Co.* (1969), 145 Ind.App. 341, 251 N.E.2d 45 we held that requirements in connection with policy loans calling for the surrender and assignment of the policy to the insurer exist for the benefit of the insurance company and can be waived by it. This appears to be the general rule. 17 Couch, *Insurance (2d)*, Section 64:21, p. 186. Accordingly, the mere fact that the insurer did not take an assignment of the policy when it made the policy loan in 1977 did not invalidate the loan.

◼ In this case the bank argues that Richard Parker sought the loan and that he had no right to secure a loan. Even so, when the insurer issued the check for the proposed loan to Connie Parker, the owner of the policy, and the bank, her assignee, it was complying with the terms of the policy. Their acceptance of the loan and execution of the assignment printed on the check would constitute an adoption or ratification of the loan. The question then remaining concerns the proper effect to be given to the bank's action in permitting the check to be cashed and deposited in Richard Parker's business account without the bank's own indorsement thereon as payee (which would also have constituted an assignment by the bank to the insurer.) The resolution of that question depends upon the facts and circumstances. Since it involves weighing the evidence and choosing among available inferences it could not be properly decided on summary judgment.

We therefore conclude the summary judgment must be reversed.

On the day the summary judgment was submitted, the insurer sought to amend its answer to add as a defense that no benefits were payable because Mrs. Parker had intentionally killed her husband.[3] The court denied the motion and the insurer contends this was error.

Pursuant to TR 15(A) the proffered amendment required leave of court. As our Supreme Court pointed out in *Huff v. Traveler's Indem. Co.* (1977), 266 Ind. 414, 363 N.E.2d 985, our policy is to liberally allow the amendment of pleadings unless the amendment will result in prejudice to the opposing party. On the other hand the decision is discretionary and our review on appeal is limited to ascertaining whether the trial court abused its discretion. 363 N.E.2d at 989.

■ Here, although the amendment was not proffered until nearly ten months after the complaint was filed, no pretrial conference had been requested, scheduled or conducted.[4] Under such circumstances the court should favor permitting the amendment. Yet the amendment was not proposed until the day of the hearing on the bank's motion for summary judgment and nothing in the record discloses justification or excuse for the delay. Under these circumstances we must conclude that the insurer has failed to establish that the trial court abused its discretion in denying the amendment. We recognize, however, that since a remand is necessary under our decision the parties may desire to further define or clarify the actual issues for trial depending upon the facts in dispute. Our conclusion that the trial court did not abuse its discretion in ruling on the proposed amended answer does not preclude the insurer (or the bank) from further amendments to the pleadings upon remand.

In view of our decision and the necessity of reversing the summary judgment we need not consider the insurer's contention that the court erred in computing the amount due under the policy.

Reversed and remanded.

HOFFMAN, P.J., and STATON, J., concur.

---

3. At least under some circumstances the claim, if established, would be a bar against the assignee. 4 Couch, *Insurance (2d)*, Section 27:162; Annot. 27 A.L.R.3d 829; *cf. Beene v. Gibralter Industrial Life Ins. Co.* (1945), 116 Ind.App. 290, 63 N.E.2d 299.

4. TR 16(A)(2) provides one of the purposes of the pretrial conference is to consider the necessity or desirability of amendments to the pleadings.